## BENNET CLARK HYDE, Appellant, v. IDA H. NELSON et al.

### Division Two, March 23, 1921.

1. **LIMITATIONS: Effect of Imprisonment and Bail.** Under the statute (Sec. 1323, R. S. 1919) declaring that "if any person entitled to bring an action in this article specified, at the time the cause of action accrued be imprisoned on a criminal charge, or in execution under a sentence of a criminal court for less than his natural life, such person shall be at liberty to bring such actions within the respective times in this article limited after such disability is removed," an action for libel brought by a person who is neither imprisoned nor physically restrained during the pendency of a prosecution against him for murder is barred by limitations if not brought within two years after the libel was published.

2. ———: ———: **Bail.** The giving of bail by a defendant in a murder charge does not stop the running of the Statute of Limitations against his civil action for libel. That "the principal is supposed to be in the bail's constant custody" is a legal fiction, and does not amount to imprisonment or physical restraint. The purpose of admitting an accused to bail is to relieve him of imprisonment, and in spite of it he is at liberty until his sureties surrender him.

3. ———: ———: ———: **Habeas Corpus.** One who has been admitted to bail is not entitled to the writ of *habeas corpus* for the purpose of obtaining his discharge. A prisoner released on bail is at liberty, and one at liberty is not imprisoned. The fact that a defendant in a murder charge gave sufficient bail and thereafter, being wrongfully committed to jail, was discharged on *habeas corpus*, did not amount to imprisonment or prevent him from bringing his civil action for libel.

4. **LIBEL: Survival.** Under the statutes, if the libeler dies before suit is brought, no action for libel can be maintained against his devisees or executor or administrator.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*H. S. Julian* for appellant.

(1) Under Sec. 5438, R. S. 1909, appellant's cause of action survived the death of William R. Nelson and the suit was properly brought against Mrs. Nelson and Mrs. Kirkwood, individually and as trustees, as being the legal representatives of William R. Nelson. Knole v. Paxton, 268 Mo. 463; Shippey v. Kansas City, 254 Mo. 23; Winter v. Van Blarcom, 258 Mo. 419; Taylor v. Met. Ry. Co., 256 Mo. 218; Ryan v. Ortgier, 201 Mo. App. 1. (2) The court erred in holding that the Statute of Limitations began to run from May 11, 1910, the time of the publication of the article, instead of from April 9, 1917, at the time he was discharged under the indictments and released from imprisonment by his bondsmen. State v. Hyde, 234 Mo. 259; 6 Mod. 231, 339; Republica v. Jailor, 2 Yates (Penn.) 265; Comm. v. Brickett, 8 Pick. (Mass.) 140; Wharton's Crim. Law and Proc. sec. 62; Devine v. State, 5 Sneed (Tenn.) 626; State v. Maken, 3 Harr. (Del.) 569; Ponder v. Cox, 26 Ga. 491; Matilda v. Crenshaw, 12 Tenn. (4 Yerger) 299; Price v. Slaughter, 1 Cinn. Rep. 429; Taylor v. Taintor, 83 U. S. (16 Wall.) 371; Pickett v. Rush, 4 Adol. and Ell. 912; Chandler v. Villett, 2 Saunders, 117; In re James, 18 Fed. 853; United States v. Stevens, 19 Fed. 101; Lassater v. Wait, 67 S. W. 518; Wood on Lim. (4 Ed.) sec. 241; 19 Am. & Eng. Ency. Law (2 Ed.), 237; 25 Cyc. 1264; State v. Calhoun, 50 Kan. 523; 18 L. R. A. 838.

*Watson, Gage & Ess* for respondents.

(1) The alleged cause of action asserted in plaintiff's petition was barred by the Statute of Limitation for the reason that the appellant was not imprisoned within the meaning of Sec. 1894, R. S. 1909. City of Warrensburg v. Simpson, 22 Mo. App. 699; Furlong v. Association, 189 S. W. (Mo.) 385; 5 Cyc. 10; 21 Cyc. 1742; 17 C. J. 441; Sec. 4391, R. S. 1909; Bird v. Jones, 7 Q. B. 742; Black's Law Dictionary; Ex parte Jones, 41 Cal. 209;

In re Morse, 117 Fed. 763; People ex rel v. Grant, 111 N. Y. 587; Miller v. Strabbing, 92 Mich. 302; Klasner v. Klasner, 170 Pac. 745; 2 Kent. Com. 26; Rich v. Bailey, 123 Ky. 897, 97 S. W. 747; Wales v. Whitney, 114 U. S. 570; Sibray v. United States, 189 Fed. 404, 107 C. C. A. 483; In re Dykes, 13 Okla. 339, 74 Pac. 506; Piggett v. Rush, 4 Adolf & Ell. 912; Matilda v. Cranshaw, 4 Yerg. (Tenn.) 299; Ramsey v. Colbaugh, 13 Iowa, 164; Garrett v. Georgia, 102 Ga. 558; Wilkes v. Slaughter, 10 N. C. 211; Spring v. Dahlman 34 Neb. 692; Alexander Wass v. Bartlett, 10 Gray (Mass.) 490; State v. Calhoun, 50 Kan. 523, 22 Pac. 38; L. R. A. 838; Lawson v. Buzines, 3 Harr. (Del.) 416; Johnson v. Bouton, 35 Neb. 398; Floyd v. State, 12 Ark. 43; 16 Am. & Eng. Ency. Law (2 Ed.), 49. Ex parte Cain, 20 Okla. 125, 93 Pac. 176; Secs. 2478, 2442, 2444 to 2448, 2456, 2448, 2467, 2468, 2471, 2472, 2474, 2477, 2483 and 1891, R. S. 1909. (2) Inasmuch as William R. Nelson died in April, 1915, and no suit had theretofore been instituted against his administrators or executors, no cause of action survives in favor of appellant against respondents, as trustees of his estate. Secs. 106, 5438, R. S. 1909.

HIGBEE, P. J.—This is an appeal from the judgment of the circuit court sustaining a demurrer to plaintiff's amended petition. Plaintiff filed his petition on April 8, 1919, and on June 10, 1919, filed an amended petition. In substance it avers that William R. Nelson was owner and publisher of the "Kansas City Star," a daily newspaper; that Stout was managing editor and Seested was general manager of said newspaper; that Nelson died in April, 1915, testate, devising his property to his wife, Ida H. Nelson, and to his daughter, Laura Nelson Kirkwood; that his will was probated; that plaintiff is a physician and surgeon in Kansas City; that said William R. Nelson and the defendant Stout and Seested, wickedly and maliciously intending to injure plaintiff and to cause it to be suspected that he was guilty of murdering Thomas H. Swope and Chrisman Swope by

poisoning them and that he tried to murder the family of Mrs. L. O. Swope by inoculating them with the germs of typhoid fever so that they would die, did, on or about May 11, 1910, publish in the "Kansas City Star" the following false, scandalous, malicious and defamatory article, to-wit:

"They said, now, Dr. Twyman, you may talk all you please, you are not going to convince us at all for we believe we know that Dr. Hyde (meaning this plaintiff) is responsible for the death of Colonel Swope, Chrisman Swope, and the inoculation of this family with typhoid," meaning thereby, etc., that on March 5, 1910, the grand jury of Jackson County returned an indictment charging plaintiff with the murder of Thomas H. Swope, under which he was arrested; that he was admitted to bail March 8, 1910, plaintiff, as principal, and certain sureties signing a bond in the sum of $50,000 under which he remained at large until April 27, 1910, when he was remanded to jail by the court; that on May 16, 1910, he was found guilty of murder in the first degree by a jury and sentenced to imprisonment for life in the penitentiary, which judgment was reversed April 11, 1911, and the cause was remanded for new trial; that he was admitted to bail on April 26, 1911, on a writ of *habeas corpus* issued by the circuit court and executed a bond for his appearance signed by himself as principal and certain others as sureties, and that he was continuously under said bond until April 9, 1917, when all indictments pending against him were dismissed. Plaintiff laid his damages, actual and punitive, at $2,500,000.

The defendant demurred, because (1) the petition does not state facts sufficient to constitute a cause of action: (2) the cause of action abated on the death of William R. Nelson: (3) no suit has been brought against the administrator of William R. Nelson, deceased. (4) the action is barred by the Statute of Limitations and plaintiff was not imprisoned within the meaning of Section 1894, Revised Statutes 1909 (now Sec. 1323, R. S. 1919). The demurrer was sustained. Plaintiff

declining to plead over, the court dismissed the action and rendered judgment against him for costs.

I. The learned counsel for appellant, in framing the amended petition, obeyed the mandate of our statute requiring the petition to contain "a plain and concise statement of the facts constituting a cause of action." The libel was published on May 11, 1910. The action was brought April 8, 1919, nearly nine years after the publication and was therefore barred by the two-year statute unless the facts stated in the petition show that the plaintiff was under the disability of imprisonment on a criminal charge until April 9, 1917. Section 1323 reads:

Limitations.

"If any person entitled to bring an action in this article specified, at the time the cause of action accrued be either within the age of twenty-one years, or insane, or imprisoned on a criminal charge, or in execution under a sentence of a criminal court for a less term than for his natural life, or a married woman, such persons shall be at liberty to bring such actions within the respective times in this article limited after such disability is removed."

Appellant urges that he was under duress and in the custody of the law and was imprisoned on a criminal charge while out on bail within the meaning of this section, and was entitled to bring his action within two years after the criminal proceedings were dismissed on April 9, 1917. To illustrate his plight appellant, in substance, says he would not have been able to enforce any of his rights that were strongly resisted against contesting litigants in a court of justice. With eight indictments still pending and the hangman's noose dangling about his ears, he would have been impotent to assert his rights. This moving, graphic picture is not suggestive of the disability of duress, but rather of the expediency of a change of venue.

Duress.

The reason for the enactment of the statute quoted is obvious. One actually imprisoned or physically re-

strained is deprived of freedom of action.  He cannot
look after his affairs.  It would be a denial

**Physical**
**Restraint:**
**Bail.**

of the equal protection of the law if one so
restrained were not exempted from the opera-
tion of the general Statute of Limitations.
The reason of the law is the life of the law.

There can be no doubt that the word *imprisonment*
is used in this section in its plain, ordinary meaning.
Imprisonment is, "The act of putting or confining a
man in prison; the restraint of a man's personal liberty;
coercion exercised upon a person to prevent the free
exercise of his powers of locomotion."  [21 Cyc. 1742.]

Appellant relies upon remarks made by Judge Fer-
riss in State v. Hyde, 234 Mo. 200, Dr. Hyde, as stated in
the petition, at the time of his indictment had given a
continuing bond in the sum of $50,000, had gone to trial
at the next term, and had given no indication of any pur-
pose to abscond.  At the close of the evidence for the
State, the court, of its own motion, revoked his bail
bond and committed him to jail on the ground "that the
evidence so far given amounts to a presumption that
under the law deprives defendant of the right to go on
bond."  This action was held to be an abuse of the
court's discretion and prejudicial to the interests of the
defendant.  To illustrate the lack of need for the court's
action, Judge Ferriss, in speaking of the condition of
the bond, at page 258, said:

"In a sense, the effect of the bail bond was to place
the defendant in the custody of his bondsmen, but he
was *in custodia legis*.  'A man's bail are looked upon
as his gaolers of his own choosing, and the person bailed
is, in the eye of the law, for many purposes esteemed
to be as much in the prison of the court by which he is
bailed as if he were in the actual custody of the proper
gaoler.'  [2 Hawkins, Pleas of the Crown, p. 140.]  It is
said in 1 Hale, 325:  'Yet the law is all one if he be under
bail, for he is *in custodia* still, for the bail are, in law,
his keepers.'  Wharton, in his work on Criminal Pleading
and Practice, says:  'The principal is supposed to be in

the bail's constant custody, and the latter being the former's jailor, may at any time surrender him to the custody of the law.' [Sec. 62.] . . . The power to surrender his principal to the court at any time is given to the surety by our statutes, Section 5230, Revised Statutes 1909. The recognizance is not a contract by which the defendant secures an unrestricted right to be at large; nor does it deprive the court of its inherent right to deal with the person of the prisoner."

In United States v. Lee, 170 Fed. 613, 614, it was said:

"In the theory of the law, by a recognizance of bail in a criminal action, the accused is committed to the custody of the sureties as to jailers of his own choosing, and is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and are bound, at their peril, to see that he obeys the court's order."

The purpose of admitting to bail is to relieve the accused of imprisonment. [People v. Mead, 92 N. Y. 415.] That Dr. Hyde was in the custody of his bondsmen is a legal fiction. He was only constructively so, because by the statute (Section 3923) a surety, when he desires, may procure a copy of the recognizance from the clerk, by virtue of which the bail may take the principal in any county in this State. It is in this sense that the law says the principal is in the custody of his bondsmen. The statute defines their control over him. He is constructively in their control at all times but he is at liberty until they actually take him into their custody.

In re Bauer, 112 Mo. 231, 234, Judge GANTT said:

"It is the duty of this and all other courts to construe these sections of the statute in a humane spirit, and our conclusion is that, when the circuit court admitted the petitioner to bail and approved his bond, he was entitled to go at liberty, notwithstanding there was no other order staying the judgment against him." And on page 235:

"The learned counsel concedes that at common law the sureties on bail bond might surrender their principal at any time. It has been quaintly said that 'bail have their principal always upon a string, and may pull the string whenever they please and render him in their own discharge.' [Anonymous, 6 Modern, 231; Toles v. Adee, 84 N. Y. 240.] The sureties are frequently called the principal's jailers, 'for he is only at liberty by the permission and indulgence of the bail; they may take him up at any time.' [Lord HARDWICKE in Ex parte Gibbons, 1 Atk. 237.]"

II.  Dr Hyde  was released from imprisonment and admitted to bail on a writ of *habeas corpus*. It is pertinent therefore to consider what constitutes imprisonment in such proceedings.

The act provides that every person unlawfully committed, detained, confined or restrained of his liberty may prosecute a writ of *habeas corpus*. [Section 1876.]

Habeas Corpus. It is uniformly held that the writ will not lie where one is at large on bail bond. It was held in the learned opinion of WALKER, C. J., in State ex rel. v. Wurdeman, 254 Mo. 561, l. c. 572:

"The test, therefore, as to the right to this writ is the existence of such an imprisonment or detention, actual though it may not be, as deprives one of the privilege of going when and where he pleases (Hurd on Hab. Corp., pp 200 et seq.); and upon such restraint being alleged, the court or judge will, in the exercise of discretion, determine whether the individual liberty of the petitioner and the demands of justice, if the petitioner is being held under the warrant or process of a court, authorize the issuance of the writ."

It is said that the writ of *habeas corpus* is intended for the benefit of all persons who may be deprived of their liberty without sufficient cause. An actual restraint is necessary to warrant interference by *habeas corpus*; but any restraint which precludes freedom of action is sufficient, and actual confinement in jail is not necessary.

Persons discharged on bail are not restrained of their liberty so as to be entitled to discharge on *habeas corpus,* but upon their surrender to the proper officers by their sureties it has been held that *habeas corpus* will lie. So, if a person who has been released on bail surrenders himself of his own accord, it is held in several jurisdictions that *habeas corpus* will not lie. [21 Cyc. 288-290, where many cases are cited in the notes.]

In Johnson v. Hoy, 227 U. S. 245, 33 S. C. 240, Mr. Justice LAMAR, at page 247, said:

"But even if it could be claimed that the facts relied on presented any reason for allowing him a hearing on the constitutionality of the act at this time, the defendant would not be entitled to the benefit of the writ, because since the appeal, he has given bond in the district court, and has been released from arrest under the warrant issued on the indictment. He is no longer in the custody of the marshal to whom the writ is addressed, and from whose custody he seeks to be discharged. The defendant is now at liberty, and having secured the very relief which the writ of *habeas corpus* was intended to afford to those held under warrants issued on indictments, the appeal must be dismissed."

See opinion by Justice MILLER in Wales v. Whitney, 114 U. S. 564, where the question is thoroughly examined. The sum of the matter is that a prisoner released on bail is at liberty and that one at liberty is not imprisoned.

III. Appellant also insists that under Section 5438, Revised Statutes 1909 (now Sec. 4231, R. S. 1919), his cause of action survived the death of William R. Nelson and the action was properly brought against his widow and daughter, the devisees in his will. The difficulty with the plaintiff's case is that Section 4231, Revised Statutes 1919, has no application. It provides that "causes of action upon which suit has been brought by the injured party for personal injuries other than those resulting in death, whether such injuries be to the health or to the person of the injured party, shall not

abate by reason of his' death, nor by reason of the death of the persons against whom such cause of action shall have accrued.'' The case is controlled by Section 97 and 98, Revised Statutes 1919. Section 97 reads:

''For all wrongs done to property, rights or interest of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or, after his death, by his executor or administrator, against such wrongdoer, and, after his death, against his executor or administrator, in the same manner and with like effect, in all respects, as actions founded upon contract.''

Section 98 reads:

''The preceding section shall not extend to actions for slander, libel, assault and battery or false imprisonment, nor to actions on the case for injuries to the person of the plaintiff, or to the person of the testator or intestate of any executor or administrator.''

It is thus seen that the action for libel as against William R. Nelson did not survive his death. Section 4231 and the cases cited by appellant have reference to actions for personal injuries, and are not in point.

The judgment is affirmed. All concur.