Argued September 7; affirmed September 19; rehearing
denied October 17, 1944

# BOCK *v.* COLLIER

(151 P. (2d) 732)

Before Bailey, Chief Justice, and Belt, Kelly, Lusk, Brand and Hay, Associate Justices.

*Emery Bock,* appellant, in pro. per.

*Earl F. Bernard,* of Portland (Collier, Collier & Bernard, of Portland, on the brief), for respondent.

HAY, J.

The plaintiff, contending that his reputation had been slandered by the defendant, brought this action for damages. The alleged facts upon which the action is based are set forth in the third amended complaint, and, so far as they are relevant, may be summarized as follows:

On April 8, 1940, at Portland, Oregon, in the presence of certain named persons and others, the defendant falsely and maliciously, and with intent and desire to injure and defame plaintiff, spoke, uttered and published certain false, malicious, scandalous and slanderous words concerning him. (It is unnecessary to state here the words alleged to have been uttered, as the question of whether or not they constituted actionable slander is not involved.) The publication of the alleged slanderous words not only defamed plaintiff's character and reputation, "but also resulted in his

immediate imprisonment in the Oregon State Penitentiary for a term of one year''. Plaintiff, at that time, was ''being held in the custody of the Multnomah County Jail in Portland, Oregon, from which he was transferred immediately to the State Penitentiary at Salem, Oregon,'' to serve a sentence of one year's imprisonment, beginning April 12, 1940. He served five months in the penitentiary, and thereupon was released on parole during good behavior for the remaining seven months of his term. Prior to April 8, 1940, plaintiff had been arrested and imprisoned upon a criminal charge, but had been released on bail. At the time when the alleged slanderous words were uttered, he was ''subject to and was under said bail, and was in the courtroom being tried upon the charge aforesaid, and was in the custody of the law and Court under and by virtue of said charge''. He remained at large under bail until April 9, 1940, when he was convicted of said charge and was committed to the county jail, where he was held until April 12, 1940, when he was removed to the penitentiary. He claims general and punitive damages in the sum of $100,000.

It is obvious that the allegations that, when the slanderous words were uttered, plaintiff was ''being held in the custody of the Multnomah County Jail'', and was ''in the custody of the law and Court'', embrace conclusions of the pleader, and are to be read as modified by the allegations that, at the time in question, he had been released on bail, was in the courtroom being tried on a criminal charge, and was ''subject to and under said bail.''

By demurrer, the defendant pleaded that the action had not been commenced within the time prescribed by the statute of limitation. The demurrer was sus-

tained by the trial court and the action was dismissed. Plaintiff appeals.

■ Actions for damages for slander must be commenced within one year after the cause of action shall have accrued. Section 1-207, O. C. L. A. The right of action in such cases accrues from the time of publication of the slander. 37 C. J., Libel and Slander, section 314. In this case, therefore, the plaintiff might have instituted his action on April 8, 1940, or at any time within one year thereafter. As the original complaint herein was not filed until April 7, 1942, it is apparent that the action was barred, unless, in the meantime, the plaintiff was under such disability as, in law, would toll the statute. So far as this case is concerned, the law is that, if, at the time when the cause of action accrued, the plaintiff was imprisoned on a criminal charge, or in execution under the sentence of a court for a term less than his natural life, then the period of such imprisonment is not to be considered as a part of the time limited for the commencement of the action, provided, however, that such period may not, in any event, be extended more than five years by any such disability, nor in any case longer than one year after the disability ceases. Section 1-215, O. C. L. A.

The plaintiff strenuously insists that, during the period while he was at large on bail, he is to be considered as having been imprisoned on a criminal charge within the purview of the statute of limitation, and that such imprisonment suspended the running of the statute.

■ It must be conceded that a person who has been arrested under a criminal charge, and who has been admitted to bail, is constructively in the custody of

the law. 8 C. J. S, Bail, section 31. It has been said that the dominion which the sureties upon a bail bond have over their principal is to be regarded as a continuance of the original imprisonment. *In re Lexington Surety & Indemnity Co.,* 272 N. Y. 210, 5 N. E. (2d) 204; *Taylor v. Taintor,* 83 U. S. 366, 21 L. Ed. 287, 16 Wall. 366; *United States v. Clatterbuck,* D. C. Maryland, 26 F. Supp. 297. Those cases are cited by appellant, but it is apparent that in none of them was the court confronted with the exact question which is presented here. *In re Lexington Surety & Indemnity Co.* involved only the question of whether or not a bail bond is, in effect, a contingent liability of the sureties, subject to exoneration upon production of the principal. *Taylor v. Taintor* was an action against sureties on a bail bond to recover the amount of their obligation. The principal had been released on bail, was suffered by his sureties to go into another state, and, while there, was surrendered by the governor of that state, on the requisition of the governor of a third state, to answer for a crime alleged to have been committed in the latter. *United States v. Clatterbuck* was a proceeding to recover upon a forfeited bail bond, in which the sureties were held to have been exonerated because, under the circumstances of the case, the default of their principal was not wilful. The statements in the opinions, to the effect that a person who has been released on bail is to be regarded as constructively in the custody of the law, must be read in the light of the facts of the respective cases.

When exceptions to the operation of a statute of limitation are made in favor of persons under disability, they should be strictly construed, and never extended beyond their plain import. 37 C. J., Limita-

tions of Actions, section 370; 34 Am. Jur., Limitation of Actions, sec. 189. A strict construction of our statute requires us to hold that a person imprisoned on a criminal charge is one who, having been charged with a criminal offense, has been actually incarcerated in a prison or jail, or, at the least, has been taken into actual custody by officers of the law, and has not been released on bail or recognizance.

One of the leading cases upon the question under consideration is *Hyde v. Nelson,* 287 Mo. 130, 229 S. W. 200, 14 A. L. R. 339. This was an action for damages for libel, in which, as here, the defense of the statute of limitations was interposed. The defendant Hyde, while in jail awaiting trial, sued out a writ of habeas corpus, and, on the return of the writ, was admitted to bail and released from imprisonment. Contending that his status exempted him from the running of the statute of limitations, he urged that, while on bail, he was in the custody of the law and imprisoned on a criminal charge within the purview of the statute. We quote from the opinion of the court:

" * * * To illustrate his plight, appellant, in substance, says he would not have been able to enforce any of his rights that were strongly resisted against contesting litigants in a court of justice. With eight indictments still pending and the hangman's noose dangling about his ears, he would have been impotent to assert his rights. This moving, graphic picture is not suggestive of the disability of duress, but rather of the expediency of a change of venue.

"The reason for the enactment of the statute quoted is obvious. One actually imprisoned or physically restrained is deprived of freedom of action. He cannot look after his affairs. It would be a denial of the equal protection of the law if one

so restrained were not exempted from the operation of the general statute of limitations. The reason of the law is the life of the law.

"There can be no doubt that the word 'imprisonment' is used in this section in its plain, ordinary meaning. 'Imprisonment' is 'The act of putting or confining a man in prison; the restraint of a man's personal liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion.' 21 Cyc. 1742. * * *

"The purpose of admitting to bail is to relieve the accused of imprisonment. People v. Mead, 92 N. Y. 415. That Dr. Hyde was in the custody of his bondsmen is a legal fiction. He was only constructively so, because by the statute (section 3923) a surety, when he desires, may procure a copy of the recognizance from the clerk, by virtue of which the bail may take the principal in any county in this state. It is in this sense that the law says the principal is in the custody of his bondsmen. The statute defines their control over him. He is constructively in their control at all times, but he is at liberty until they actually take him into their custody. * * *"

See also *Rose v. Washington Times Co.*, 57 App. D. C. 385, 23 F. (2d) 993.

*Lasater v. Waites*, Tex. Civ. App., 67 S. W. 518, cited by plaintiff, is not in point. The plaintiff in that case, a prisoner in custody of a sheriff, sustained physical injuries through the sheriff's negligence while transporting him from one place to another, and the action was instituted against the sureties on the sheriff's bond to recover damages as for trespass. The defendants pleaded the statute of limitation, which plea was sought to be avoided by the plaintiff upon the ground that he was "a person in prison" in contemplation of the Texas statute. He had been con-

tinuously confined in the county jail from August 4, 1893, under a charge of horse-stealing, and so remained until March 17, 1894, when, having been tried and convicted, he was removed to the penitentiary to serve his sentence. His cause of action arose September 15, 1893, and it is obvious that at that time he was actually "a person in prison".

■■ The cause of action in the case at bar having commenced to run on April 8, 1940, when the alleged slanderous words were uttered, and the plaintiff, at that time, not having been under the disability of being imprisoned on a criminal charge, or other legal disability, it is immaterial that subsequently he was confined to the state penitentiary in execution under a sentence of a court, for a term less than his natural life, and, having served a portion of his sentence, was released on parole. This is so because, under our law, in order to be available to the plaintiff, the disability must have existed when the right of action accrued, and a disability arising subsequently cannot be considered. Section 1-220, O. C. L. A.; *Richards v. Page Investment Co.*, 112 Or. 507, 228 P. 937. These facts make it unnecessary for us to decide whether or not the plaintiff's status, while on parole, was that of a person imprisoned in execution under the sentence of a court.

We are of the opinion that the lower court did not err in sustaining the defendant's demurrer and dismissing the action. The judgment is affirmed.