Thomas E. JEPSON, Appellant,

v.

James S. STUBBS, Respondent.

No. 59803.

Supreme Court of Missouri,
En Banc.

Sept. 12, 1977.

Arthur A. Benson, II, Kansas City, for appellant.

Dean F. Arnold, Kansas City, for respondent.

FINCH, Presiding Judge.

This is an appeal from a summary judgment in a negligence action wherein Thomas E. Jepson, hereinafter referred to as plaintiff, sought actual and punitive damages from James S. Stubbs, hereinafter referred to as defendant, his former attorney, for alleged negligence in connection with his representation of plaintiff on a charge of refusing to submit to induction into military service. The appeal was taken to this court on the basis that some of the ques-

tions raised necessitate construction of federal and state constitutional provisions. While we do not reach those questions in deciding the case, we conclude that we do have jurisdiction. We affirm.

The record before us includes plaintiff's amended petition, defendant's answer thereto, a motion for summary judgment and a stipulation of facts. From those we recite the facts pertinent to our resolution of this appeal.

On January 16, 1967, plaintiff received from his local board of the Selective Service System an order to report for induction. He then requested classification as a conscientious objector. After a hearing, that request was denied and plaintiff was told to report February 17, 1967. He reported to the center as directed but refused to submit to induction. He then consulted with and retained defendant to represent him on anticipated federal charges based on his refusal to submit to induction.

Ultimately, defendant advised plaintiff that he had no defense to the charges. Relying on that advice, plaintiff waived indictment and on August 1, 1967, entered a plea of guilty to an information charging him with a violation of the Military Selective Service and Training Act. On September 8, 1967, he was sentenced to serve three years in the custody of the Attorney General of the United States. After serving nearly 18 months in a federal reformatory, he was released therefrom on March 4, 1969, and placed on parole. On September 7, 1970, he was released from parole.

On March 12, 1973, plaintiff consulted with another attorney concerning a pardon or other relief to restore his civil rights. In that conference he learned for the first time that there might have been a defect in the order to report for induction which could invalidate his conviction. He filed a

petition for writ of coram nobis in the federal district court where his sentence had been imposed and on February 15, 1975, the judge announced his intention to sustain petitioner's motion for summary judgment, thereby setting aside plaintiff's conviction. The formal order was entered subsequently. Rather than appeal, the United States Attorney dismissed the original charge against plaintiff.

Plaintiff filed this suit for damages on August 18, 1975. In his petition he pleaded that although apparently his suit was barred by the five-year statute of limitations applicable to malpractice actions against attorneys [§ 516.120(4)],[1] such actually was not the case because § 516.170 provides that the statute of limitations is tolled for persons imprisoned during the period immediately subsequent to defendant's negligence.[2] Furthermore, alleged plaintiff, § 516.100 provides that a cause of action is not deemed to accrue until " * * the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item [of damage] * * * ". On the basis of § 516.100, plaintiff contends alternatively that his cause of action did not accrue and the statute of limitations did not begin to run until September 7, 1970 (on the theory that he sustained the last item of damages when he was released from execution of his criminal sentence), or until March 12, 1973 (when he first discovered his attorney's negligence and the fact that he had a cause of action), or until April 15, 1975, when the federal court set aside the 1967 conviction on finding that plaintiff's guilty plea was not knowingly made (on the theory that an action against defendant would have been collaterally estopped prior to that date).

1. All *statutory references are to RSMo 1969* unless otherwise indicated.

2. The text of § 516.170 is as follows:
"If any person entitled to bring an action in sections 516.100 to 516.370 specified, at the time the cause of action accrued be either within the age of twenty-one years, or insane, or

imprisoned on a criminal charge, or in execution under a sentence of a criminal court for a less term than for his natural life, such persons shall be at liberty to bring such actions within the respective times in sections 516.100 to 516.-370 limited after such disability is removed. (R.S. 1939, § 1020")

The trial court held that the five-year statute of limitations [§ 516.120(4)] did bar plaintiff's cause of action and that the running of the statute was not tolled by § 516.170 for the reason that plaintiff's incarceration was in a federal reformatory, not an institution within the department of corrections.

### 1. Did § 516.170 toll the statute of limitations?

■ Defendant argues, and the trial court evidently concluded, that § 516.170 is a reciprocal statute to § 222.010, known as the civil death act.[3] The latter statute provides for loss of civil rights by one convicted and sentenced to imprisonment in an institution within the department of corrections for a term less than life and for civil death for those sentenced to life imprisonment. Defendant reasons that § 516.170 was enacted to compensate for that loss by tolling the statute of limitations during the period of imprisonment. Since § 222.010 is limited in its application to persons sentenced to imprisonment in institutions of the department of corrections, defendant concludes that § 516.170 likewise is so limited and has no application to one imprisoned in a federal institution.

Defendant's premise that the two statutes were enacted as reciprocal statutes is untenable. The predecessor statute of what is now § 516.170 first appeared in chapter 43 of the territorial laws applicable to Missouri before it became a state. It was dated July 4, 1807. It continued to be a part of the applicable laws thereafter. It was not until 1835 that the statute which was the predecessor of § 222.010 was enacted. Crimes and Punishments, Mo.Rev.Stat. art. IX, § 19 (1835). Obviously, it was not

the existence of this civil death statute which prompted enactment of the tolling statute. The two are not reciprocal statutes and it cannot be said that § 516.170 is limited to persons imprisoned in institutions of the department of corrections because the application of § 222.010 is limited to such persons.

We look, therefore, to the language of § 516.170 to determine its application. It states in general terms that one is under a disability which has the effect of tolling the statute of limitations when such person is " * * * imprisoned on a criminal charge, or in execution under a sentence of a criminal court for a less term than for his natural life, * * * ". Since the language is general, it apparently was intended to apply to all such imprisonment, regardless of what court imposes the sentence or where it is served. There is no language in § 516.170 to indicate otherwise. Furthermore, the language of the section makes it applicable to imprisonment on a criminal charge before conviction as well as to imprisonment which is in execution of a sentence imposed. That means that incarceration in jail pending trial on a criminal charge would toll the statute of limitations. This clearly confirms the conclusion that § 516.170 is not limited to imprisonment in institutions within the department of corrections.

■ Accordingly, we conclude and hold that imprisonment of plaintiff in a federal reformatory did result in tolling of the statute of limitations in accordance with § 516.170.[4] This conclusion is consistent with what this court said about the statute in question in *Hyde v. Nelson*, 287 Mo. 130, 229 S.W. 200, 14 A.L.R. 339 (1921):

"The reason for the enactment of the statute quoted is obvious. One actually

---

**3.** That portion of § 222.010 relating to suspension of civil rights and civil death of prisoners was declared unconstitutional in *Thompson v. Bond*, 421 F.Supp. 878 (W.D.Mo.1976). However, that does not affect the issues resolved in this case.

**4.** We recognize that *White v. Fawcett Publications*, 324 F.Supp. 403 (W.D.Mo.1971), holds that § 516.170 is inapplicable to prisoners under federal sentence, citing *Hill v. Gentry*, 280

F.2d 88 (8th Cir. 1960), which, in turn, relied on *Presbury v. Hull*, 34 Mo. 29 (1863). Actually, *Hill v. Gentry* construed § 222.010 rather than § 516.170 and the same is true of *Presbury v. Hull*. As we have indicated, we are of the opinion that § 516.170 is not governed by the more restrictive statutory language in § 222.010, and it is our view and holding that § 516.170 is applicable to persons imprisoned in federal penal institutions.

imprisoned or physically restrained is deprived of freedom of action. He cannot look after his affairs. It would be a denial of the equal protection of the law if one so restrained were not exempted from the operation of the general statute of limitations. * * * " 229 S.W. at 201.

However, even though § 516.170 was applicable and resulted in tolling of the statute of limitations during plaintiff's imprisonment in the federal reformatory, it did not toll the statute for a sufficient period of time to prevent plaintiff's cause of action from being barred. Plaintiff was imprisoned in the reformatory only until March 4, 1969, at which time he was released on parole. That was more than 5 years before suit was filed on August 18, 1975. Hence, unless § 516.170 also operated to toll the statute while plaintiff was on parole and until he was released therefrom on September 7, 1970, plaintiff is not entitled to maintain this action by reason of § 516.170.

■ Whether it was so tolled was answered in *Hyde v. Nelson, supra.* In that case plaintiff filed a libel suit on April 8, 1919, based on a newspaper article published on May 11, 1910. The two-year statute of limitations was applicable and barred the suit unless the statute was tolled under the provisions of § 1323, RSMo 1919 (now § 516.170). Plaintiff had been indicted for murder on March 5, 1910. He was admitted to bail on March 8, 1910, and remained at large until April 27, 1910. Plaintiff then was convicted but the judgment was appealed and was reversed and remanded on April 11, 1911. On April 26, 1911, plaintiff again was admitted to bail and he remained at liberty until April 9, 1917, when all indictments were dismissed. Plaintiff contended that he was under duress and in custody of the law and in effect was imprisoned on a criminal charge while he was out on bail. Consequently, he argued, the tolling statute was applicable during that time. This court ruled otherwise, saying that the word "imprisonment" in the statute is used in its plain, ordinary meaning and has reference to actually being confined in an in-

stitution. What the court said in holding that one on bail was not imprisoned as contemplated in the tolling statute applies to one at liberty on parole. Hence, plaintiff is not entitled to have the statute of limitation tolled by reason of his being on parole from March 4, 1969, to September 7, 1970. Sec. 516.170 tolled the statute of limitations only to March 4, 1969.

*2. Should plaintiff's cause of action be deemed to have accrued on one of the dates contended for by plaintiff under the provisions of § 516.100?*

■ In determining whether an applicable statute of limitation bars recovery, it is necessary to establish when that cause of action accrued. The standards for making that determination have been provided by the general assembly in § 516.100 which reads as follows:

"Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained. (R.S. 1939, § 1012)"

As previously noted, plaintiff argues alternatively for three dates as being the one on which his cause of action should be deemed to have accrued. If he is correct as to any one of those dates, his suit against defendant was not barred by limitation.

*a. Did it accrue September 7, 1970?*

■ Plaintiff contends that on September 7, 1970, the date when he was released from parole, he suffered the beginning of the last item of damages inflicted on him. He says that as of that date he had been released from his incarceration and from

the limitations of his parole and that from and after that date no new or different elements of damage were imposed upon him although he continued to suffer as a result of these things. He had been released from his criminal sentence, including the conditions of parole, and was now free to seek employment, impeded only by the fact of his criminal conviction. That was the time, maintains plaintiff, that the last item of his damages resulting from defendant's actions was sustained and capable of ascertainment. In response defendant argues that when plaintiff was adjudged guilty and sentenced to imprisonment for 3 years, his damages were sustained and capable of being ascertained at that time.

At the time plaintiff was sentenced to a term of 3 years in custody of the Attorney General, it would not have been possible to know or show to a jury how much of that time plaintiff would be required to serve in prison. It was not possible to know or show whether or when plaintiff might be placed on parole and the conditions of such parole. For that reason, we conclude that the damage sustained by plaintiff was not capable of ascertainment at that time.

However, it was not necessary to wait until September 7, 1970, to know the answers to those questions. On March 4, 1969, plaintiff was released from confinement and placed on parole for the remainder of his term. At that time plaintiff knew and was in a position to show to the jury that his actual imprisonment continued until March 4, 1969, and that he would be on parole for the remainder of his term, subject to whatever terms thereof were specified. Plaintiff has not suggested anything affecting the elements or extent of his damage which could have been proved September 7, 1970, which could not have been proved on March 4, 1969. Consequently, we hold that plaintiff's damage had been sustained and was capable of ascertainment on March 4, 1969.

### b. Did it accrue March 12, 1973?

This is the date on which the parties have stipulated that plaintiff first discovered that there might be a defect in the order to report for induction which could invalidate his conviction. While not stated in the stipulation, it follows that this was the time when plaintiff discovered the alleged negligence of defendant in advising plaintiff that he had no defense to the charge and that he ought to plead guilty.

Plaintiff argues that it is unclear in Missouri whether in actions against attorneys for negligence the statute of limitations begins to run on the date of discovery of the alleged negligence or when the wrong was done or possibly on some other earlier date. He argues that there is a strong trend in other jurisdictions to hold that in such cases, because of the special nature of the relationship between attorney and client and the fact that the client needs to and does rely on the attorney rather than checking on his work to detect any malpractice, the statute does not begin to run until discovery[5] and that Missouri also should adopt a rule of discovery. Such a rule would mean that plaintiff's cause of action accrued on March 12, 1973.

It is true that several states have adopted the discovery rule in cases wherein clients seek recovery against an attorney for alleged malpractice. The argument for such a rule has appeal and we can understand a court reaching that result where applicable statutory provisions permit. However, § 516.100, which governs application of § 516.120(4) to this case, does not establish a rule of discovery for the purposes of determining when a cause of action accrues and the statute of limitations begins to run. Instead, it establishes the "capable of ascertainment" test.[6] *Chemical Workers Basic Union v. Arnold Savings Bank*, 411

---

5. Typical of the cases cited by plaintiff are *Hendrickson v. Sears*, 365 Mass. 83, 310 N.E.2d 131 (1974), *Edwards v. Ford*, 279 So.2d 851 (Fla.1973), and *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (banc 1971).

6. Prof. Frederick Davis in his article "Tort Liability and the Statutes of Limitation", 33 Mo.L. Rev. 171 (1968), so recognizes when he states at 187–188:

"Before it can be decided whether a given action is barred by the appropriate statute of

S.W.2d 159 (Mo. banc 1966); *Thorne v. Johnson*, 483 S.W.2d 658 (Mo.App.1972). If the legislature had intended to prescribe a "discovery" test rather than the "capable of ascertainment" test, it would have expressly so provided. We so conclude because it did exactly that in § 516.120(5) where it established a discovery test in actions for relief based on fraud (subject to the proviso that it must be discovered within 10 years) and in § 516.105, Laws 1976, p. 767, S.B. No. 470, § 2, wherein it provided that in actions for medical malpractice involving acts whereby foreign objects are permitted to remain in the body, the action must be brought within 2 years from the date of discovery or the date on which the patient in the exercise of ordinary care should have discovered such negligence (subject to the proviso that no action could be commenced after 10 years from the date of the act of neglect complained of).

In his article[7] Professor Davis suggests that the phrase "capable of ascertainment" be construed to mean "capable of ascertainment in the normal course of events by this particular plaintiff in the exercise of reasonable diligence". Thus interpreted, he recognizes, the "capable of ascertainment" test would be almost equivalent to the "discovery" test. In so suggesting, Professor Davis seeks to arrive at what he deems to be a more just result. However, to so construe the language of the existing statute (§ 516.100) would be to rewrite the statute so as to establish a "discovery" rather than a "capable of ascertainment" test in all instances to which the statutes of limitation are applicable. This is not what the legislature did and it is not for us to rewrite the statute to so provide. If that is to be done, it must be by legislative action.

We hold that plaintiff's cause of action did not accrue on March 12, 1973.

### c. Did it accrue on April 15, 1975?

Plaintiff urges that date as the one on which his cause of action accrued on the theory that prior to that date such action against defendant would have been collaterally estopped. He argues that this is true because the action was founded on the allegation that plaintiff's conviction resulted from a plea of guilty not knowingly entered since it was based on negligent advice from defendant, and because the 1967 judgment of conviction included a finding that plaintiff's plea of guilty had been knowingly entered.

Plaintiff's cause of action is based on alleged negligent conduct of defendant in not properly investigating the facts of his case and the applicable law and in negligently advising him that he had no defense and to plead guilty when, in fact, he did have a defense, resulting in plaintiff acting on that advice to his detriment. We conclude that it was not a condition to maintaining that suit that the judgment of conviction be set aside. A hypothetical example will illustrate. Suppose that plaintiff in this suit had been sued for damages for negligent conduct in operating his car and defendant attorney advised him that he had no defense and should confess judgment. Suppose further that plaintiff followed his attorney's advice and confessed judgment and then paid it. Assume finally that it developed subsequently that the attorney had not investigated the facts or the law and was clearly wrong in his advice. The confession of liability and the resulting judgment would at least imply a finding that defendant knowingly recognized and

---

limitation, it must be determined at what time the statute began to 'run'. Statutes and judicial decisions have tended to identify one of four events as 'triggering' the running of the statute: the moment the defendant commits his wrong (the 'wrongful act' test); the moment the plaintiff sustains substantial injury or interference (the 'sustainment of injury' test); the moment that plaintiff's damages are substantially complete (the 'capable of ascertainment' test); or the moment the

plaintiff first becomes aware that he had been aggrieved (the so-called 'discovery' test).

"The policy established by the Missouri statute adopts the third test. The running of the statute is measured from the time that the damages are complete *and* capable of ascertainment. * * * *"

7. See footnote 6, *supra.*

admitted his negligence and his liability. However, contrary to plaintiff's theory regarding collateral estoppel, it would not be a condition to a suit against the attorney that plaintiff somehow have set aside the prior judgment finding him negligent and liable in damages. Plaintiff could sue him based on his negligent conduct and would not be collaterally estopped from bringing the suit by the judgment that he was negligent and liable to the one who sued him. If plaintiff in this hypothetical situation could prove to the jury that the attorney negligently represented and advised him and that he relied thereon and confessed judgment based on the attorney's advice, he would have proved that which would be necessary for him to recover.

■ Likewise, in this case, the existence of the judgment of conviction and the findings therein would not collaterally estop plaintiff from bringing an action against defendant. Consequently, we hold that accrual of plaintiff's cause of action was not postponed to April 15, 1975.

Having concluded that plaintiff's cause of action accrued on March 4, 1969, and not on September 7, 1970, March 12, 1973, or April 15, 1975, it follows that more than 5 years elapsed before suit was filed on August 18, 1975, that the suit was barred by limitation under § 516.120(4), and that the trial court was correct in entering summary judgment in favor of defendant.

Judgment affirmed.

MORGAN, C. J., and HENLEY, DONNELLY, RENDLEN and SEILER, JJ., concur.

BARDGETT, J., concurs in result.