**Donna A. GOODMAN–HERRON, Plaintiff,**

v.

**ADVANCED NAVIGATION & POSITIONING CORPORATION, an Oregon corporation, and Adolph A. Hirsch, individually, Defendants.**

**Civil No. 95–447–FR.**

United States District Court, D. Oregon.

Sept. 16, 1996.

---

Judy Danelle Snyder, Shelley Dennis Russell, Hoevet & Snyder, P.C. Portland, OR, for Plaintiff.

Scott T. Cliff, Carter & Cliff, Wilsonville, OR, for Defendant Advanced Navigation & Positioning Corporation.

Amy R. Alpern, Amburgey & Rubin, P.C., Portland, OR, Kristine D. Burr, Portland, OR, for Adolph A. Hirsch.

## OPINION

FRYE, District Judge:

The matter before the court is the plaintiff's motion for summary judgment against defendant Hirsch's counterclaim (# 54).

The plaintiff, Donna A. Goodman–Herron, alleges that on March 8, 1994, while she and the defendant, Adolf A. Hirsch, were on a business trip to Arlington, Virginia, Hirsch raped her. Shortly after her return from Arlington, Virginia, Goodman–Herron told her family, friends and colleagues that she had been raped by Hirsch.

Between March 10, 1994 and May 31, 1994, Goodman–Herron spoke with numerous co-workers and representatives of ANPC regarding the rape by Hirsch. In April of 1994, Goodman–Herron had dinner with Steve Rast of SRS Technologies, a contractor of the defendant, Advanced Navigation Positioning Corporation (ANPC), and told Rast about the rape. On April 13, 1994, Goodman–Herron told ANPC owner, Charlene Stoltz, that Hirsch had raped her and thereafter would not leave her alone. On May 31, 1994, Goodman–Herron reported the rape to corporate counsel for ANPC. Hirsch was told of Goodman–Herron's charges shortly thereafter.

In June of 1994, Goodman–Herron filed a claim for workers' compensation for stress-related injuries caused by Hirsch. On July 18, 1994, Goodman–Herron filed a complaint with the Bureau of Labor and Industries of the State of Oregon and the Equal Employment Opportunity Commission against Hirsch and ANPC. In September of 1994, Goodman–Herron filed a criminal report with police officials in the State of Virginia.

In December of 1994, hearings began on Goodman–Herron's claim for workers' compensation benefits. Hirsch was present for the taking of all of the testimony in the workers' compensation hearings, including the testimony of several individuals involved in the aviation and navigation industry who testified that Goodman–Herron had reported to them that she had been raped by Hirsch. Goodman–Herron testified during the workers' compensation hearing that she had told several friends, relatives and members of her Toastmasters Club about the rape.

On April 10, 1995, Goodman–Herron filed the complaint in this case against ANPC and Hirsch. On May 26, 1995, Hirsch filed an answer to Goodman–Herron's complaint alleging as an affirmative defense that Goodman–Herron's claims against him were false and malicious.

Hirsch was told in January of 1995 that he would be terminated because of corporate downsizing. Hirsch's last day of employment with ANPC was March 15, 1995. From January of 1995 to the present, Hirsch has made hundreds of contacts by mail with possible employers. Hirsch has presented no evidence that any of the potential employers to whom he mailed resumes knew or were informed of the charges made by Goodman–Herron against him.

In his second amended answer and counterclaim filed on March 5, 1996, Hirsch alleges a claim against Goodman–Herron for defamation. Hirsch has testified under oath that the damage to his business reputation as a result of Goodman–Herron's charges began on May 31, 1994, when he was informed of the charges, and consists of a decline in his effectiveness at ANPC, a change in the attitude of the management of ANPC toward him, and the stress associated with working with others in light of Goodman–Herron's charges.

## CONTENTIONS OF THE PARTIES

Goodman–Herron contends that Hirsch's counterclaim for defamation was filed after the applicable statute of limitations for a claim for defamation had expired, and that Hirsch has presented no evidence in support

of his claim for defamation. Goodman–Herron contends that the statements made by her to third parties were not defamatory because the statements do not identify Hirsch by name and because the statements are either conditionally or absolutely privileged.

Hirsch contends that in his answer filed on May 26, 1995, he alleged that the claims made against him were fraudulent and malicious, and that these allegations are sufficient to state a claim for defamation because they put Goodman–Herron on notice that her charges are false and were made with the intent to injure Hirsch. Hirsch contends that his counterclaim for defamation, which was included in his second amended answer filed on March 5, 1996, was merely a clarification of the earlier alleged defamation claim. Hirsch further contends that the discovery rule tolled the statute of limitations for some of the publications, and other publications were made within one year of the filing of his counterclaim in his second amended answer.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976).

## ANALYSIS AND RULING

1. *Statute of Limitations*

▮ A claim for defamation lies where there has been an unprivileged publication to a third person of a false and defamatory matter concerning the plaintiff that damages

the plaintiff's reputation. RESTATEMENT (SECOND) OF TORTS § 568 cmt. d (1977). A claim for defamation must be filed within one year of the date that the defamatory statement is made. O.R.S. 12.120(2). The statute of limitations begins to run from the date of the publication of the false and defamatory statement. *Bock v. Collier,* 175 Or. 145, 148, 151 P.2d 732 (1944).

▮ Hirsch filed an answer to Goodman–Herron's complaint on May 26, 1995 alleging that the charges against him had been "fraudulently and maliciously made." Hirsch did not allege a counterclaim for defamation against Goodman–Herron in his answer of May 26, 1995, and he did not allege the elements of a claim for defamation in his affirmative defense. Hirsch's allegation that the charges against him were "fraudulently and maliciously made" by Goodman–Herron does not state a claim for defamation against Goodman–Herron.

Hirsch contends that the allegations in his affirmative defense are sufficient to put Goodman–Herron on notice of his defamation claim against her, and that he should be allowed to amend his affirmative defense to state a claim for defamation. Hirsch cites no law in support of his argument that an affirmative defense which includes some of the elements of a claim should be considered a claim for purposes of the tolling of the statute of limitations. The cases cited by Hirsch concern the ability to replead when the wording of a complaint, not an affirmative defense, are insufficient to state a cause of action and, thus, are inapplicable to his situation. Hirsch's affirmative defense as alleged does not give notice to Goodman–Herron of a claim for defamation and cannot be considered as a claim for defamation. Accordingly, the earliest that Hirsch tolled the running of the statute of limitations was on January 12, 1996, when he sought leave of the court to file his second amended complaint containing the counterclaim.

▮ The discovery rule applies to defamation actions when the initial publication is confidential in nature and not something that a plaintiff would be presumed to have known about, even if he had exercised reasonable

diligence. *White v. Gurnsey,* 48 Or.App. 931, 936, 618 P.2d 975 (1980) (discovery rule applied to confidential memorandum). Here, Goodman–Herron made numerous publications to her friends, family members, co-workers, and colleagues in the aviation industry. These initial publications are more similar to the confidential business memorandum in which the defamation was published in *White* than to the statements made at a public school board meeting in *Workman v. Rajneesh Found. Int'l,* 84 Or.App. 226, 733 P.2d 908, *rev. denied,* 303 Or. 700, 740 P.2d 1213 (1987), for which the court concluded that the discovery rule did not apply. Thus, the discovery rule tolls the running of the statute of limitations until Hirsch became aware of the initial publications.

On December 19, 1994, Hirsch heard testimony at Goodman–Herron's workers' compensation hearing which concerned many of the initial publications by Goodman–Herron. Robert Barnett, David Craft, and Christopher Corich all testified that Goodman–Herron told them she had been raped. It is unclear if Goodman–Herron had identified Hirsch by name to these men or only identified him as her boss. Also at the hearing, Goodman–Herron testified that she had previously told many people about the rape, including her sister Patricia, her mother, her mother-in-law, and some friends and co-workers identified as Verna, Susie, Jackie, Brad Hanel, Karen Montgomery, and K.K. McDonald. Thus, Hirsch became aware of these earlier publications when he heard the testimony on December 19, 1994. More than one year passed before Hirsch moved to file his second amended complaint on January 12, 1996. Therefore, Hirsch's counterclaim based on these initial publications, and any other publications disclosed at the workers' compensation hearing, is barred by the statute of limitations.

The record contains information of other publications which Hirsch discovered within a year of moving to file his counterclaim on January 12, 1996. When she was deposed on December 7, 1995, Goodman–Herron identified other people with whom she had spoken and who were apparently not mentioned at the workers' compensation hearing. These included, among others, Mike Hill, Ken Brooks, Chuck Canham, Greg Fishback, and Tony Ramirez. An *Oregonian* article about the workers' compensation insurer, SAIF, which was published on October 29, 1995, included the statement that Goodman–Herron, who was employed by ANPC, had been raped by "her boss" on a business trip. Hirsch is not specifically named. The article states that Goodman–Herron consented to having her name used in the story. Hirsch discovered these initial publications on the day of the deposition and when the newspaper article was published, both within a year of moving to file the counterclaim. The court does not have all of the testimony from the workers' compensation hearing. Assuming that these initial publications were not disclosed at the workers' compensation hearing, the counterclaim was filed within a year of their discovery and may proceed against them. If any of these initial publications were disclosed at the workers' compensation hearing, the counterclaim based on any publication so disclosed is barred by the statute of limitations.

### 2. *Identity of Hirsch*

■ Goodman–Herron contends that any publication in which Hirsch is not identified by name cannot defame him because the reference to "her boss" at ANPC would not be understood by third parties to refer to Hirsch. The record on this issue is not clear enough for a decision to be made in a motion for summary judgment. Accordingly, the court will allow Hirsch to prove at trial that he was personally defamed. *See Patzer v. Liberty Communications, Inc.,* 58 Or.App. 679, 682, 650 P.2d 141 (1982).

### 3. *Privileges*

■ Goodman–Herron contends that her statements to employees of ANPC, Barnett, Craft, and Corich were absolutely privileged because they were made preliminary to the quasi-judicial administrative proceeding at the workers' compensation hearing. *See Tillamook Country Smoker, Inc. v. Woods,* 732 F.Supp. 1091, 1093–94 (D.Or.1990). In *Tillamook Country,* the letters accorded absolute privilege were sent to the Oregon Economic

Development Department and the Office of Civil Rights Compliance of the Small Business Administration to accuse a company of sex discrimination in its contractual relations.

The court agrees that testimony at a workers' compensation hearing is absolutely privileged. Goodman–Herron's statements to these people, however, were made a few months before the workers' compensation hearing. Further, Goodman–Herron testified at the workers' compensation hearing that she told many people of the rape because "I was confused, and I was upset, and I didn't know what I should do, and I just needed to tell someone to get some help." Goodman–Herron's statements were not statements made incidental to a workers' compensation hearing and are not absolutely privileged.

■ Goodman–Herron contends that her statements to ANPC and her family and friends were conditionally privileged because they were made to persons having a corresponding interest in the subject matter. The court is unaware of any Oregon case which holds privileged statements made to family members and friends concerning personal difficulties. Therefore, summary judgment on this basis is denied.

### CONCLUSION

Goodman–Herron's motion for summary judgment against Hirsch's counterclaim (# 54) is granted in part and denied in part. Hirsch may proceed with his counterclaim for damages for the publications of the alleged defamatory remarks which occurred or were discovered by Hirsch after January 12, 1995.