**MODERN TRACTOR and SUPPLY COMPANY, Plaintiff–Appellant,**

v.

**LEO JOURNAGAN CONSTRUCTION COMPANY, INC., Defendant–Respondent.**

No. 18469.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 3, 1993.

Michael K. Cully, Greggory D. Groves, Lowther, Johnson, Joyner, Lowther, Cully & Housley, Springfield, for plaintiff-appellant.

Thomas W. Millington, Schroff, Glass & Newberry, P.C., Springfield, for defendant-respondent.

FLANIGAN, Presiding Judge.

On November 29, 1989, plaintiff filed this action against defendant, seeking actual and punitive damages based on an alleged trespass committed by defendant in 1983 on land in Springfield then owned by plaintiff's predecessor in title. Defendant filed a motion for summary judgment, based on § 516.-120(3),[1] the five-year statute of limitation pertaining to an action for trespass on real estate. An additional ground in the motion was that plaintiff lacked standing to sue because plaintiff did not acquire title to the land until 1984. The trial court sustained the motion. Plaintiff appeals.

Plaintiff contends that the trial court erred in sustaining defendant's motion for summary judgment because:

1. Plaintiff's cause of action for trespass was not barred by the statute, in that (a) the trespass was of a continuing nature, and plaintiff had a separate cause of action for each day the trespass continued, or (b) the damages were not capable of ascertainment until March 1989, when scientific tests were performed, and the statute did not commence to run until March 1989, and

2. Plaintiff had standing to sue because: (a) the trespass was of a continuing nature and created separate causes of action after plaintiff purchased the land, or (b) the effect of the trespass did not manifest itself until scientific tests were performed in March 1989, at which time plaintiff was the owner.

In *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371 (Mo. banc 1993), the court said, at 376:

> When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

> Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. (Authorities omitted.)

At the trial court, prior to the filing of defendant's motion for summary judgment, the parties stipulated to the following facts:

Defendant, from August 1983 to approximately September 1983, caused a certain amount of gumbo fill dirt to be placed upon the land then owned by plaintiff's predecessor in title. The gumbo fill dirt was contoured and spread across the land and has continuously remained there. Defendant has had no contact with the land since September 1983. Plaintiff purchased the land on April 26, 1984. In March 1989, after scientific tests had been performed, plaintiff discovered that the gumbo fill dirt was located on the land. This action "for trespass attributable to the dumping of fill dirt" was filed by plaintiff on November 29, 1989. The "fill material" could have been seen in 1983 "[if] someone walked over that portion of [the land] where the gumbo fill dirt was placed." The fill material could not be seen from Battlefield Road as it existed in 1983. The portion of the land where the fill material was placed was covered by vegetation "within six months of Plaintiff's (sic) placement of the gumbo fill dirt."[2]

---

1. All references to statutes are to RSMo 1986, V.A.M.S.

2. The stipulation did not state whether defendant's entry was with or without consent of plaintiff's predecessor in title. Defendant's motion for summary judgment stated: "[T]here is evidence now before the court in the form of answers to interrogatories indicating that there was permission obtained by defendant for the dumping of the fill dirt in question. However, that evidence is in question and is subject to a factual determination."

This court must review the record in the light most favorable to plaintiff, the party against whom summary judgment was entered. This opinion assumes that the entry was without consent. *The petition so alleged.*

Defendant's motion for summary judgment incorporated the stipulation of facts and pleaded that the action was barred by § 516.-120(3). The motion also pleaded that plaintiff did not become the owner of the land "until seven months after the acts allegedly constituting the trespass had occurred" and thus plaintiff "does not have legal standing to pursue the claim for trespass."

In response to the motion, plaintiff filed the affidavits of the following three witnesses:

Fred E. Palmerton: I am a licensed engineer specializing in soil testing to determine the suitability of soil for construction purposes, including roads, utilities, buildings, and parking lots. Commencing March 3, 1989, and ending on July 8, 1989, I performed tests of the soil located on plaintiff's land. My testing revealed that "gray to black silty soil, commonly referred to as gumbo" was located on the property in the area shown on the attached plat.[3] The area is approximately 1,580 feet north of Battlefield Road. Plaintiff retained me to determine the suitability of the soil for development purposes. Gumbo fill dirt is of an inferior quality and is not desirable for fill material in that it increases construction costs over and above that which is experienced with ordinary soil or clay because of the difficulty in compaction, the presence of organics, and susceptibility to changes in moisture content. In order to plan adequately for the construction of roads, utilities, buildings, and parking lots, it is necessary to determine the degree of compaction "of soil and/or other fill materials" on plaintiff's land. The degree of compaction can be determined only through the use of physical tests performed by experienced soil engineers or technicians.

Robert B. Murray, Jr.: I am a licensed real estate broker. The existence of gumbo fill material, as opposed to normal fill dirt or clay, reduces the fair market value of the land. I am familiar with plaintiff's land and I have been advised of the existence and location of the gumbo fill dirt. If ordinary soil or clay had been used as fill material, rather than the gumbo fill dirt, the fair market value of the land would have been increased as a result of the fill dirt being placed thereon. Use of the gumbo fill dirt material instead of ordinary soil or clay has reduced the fair market value of plaintiff's land.

Lester B. Cox: I am vice president of plaintiff and I am also vice president of the corporation which was plaintiff's predecessor in title. Plaintiff does not now have, nor has it ever had, any officer, director, or employee who was knowledgeable about the suitability of dirt or other fill materials for the construction of buildings, utilities, parking lots, and roads, nor did plaintiff's predecessor in title have any such officer, director, or employee. Plaintiff did not acquire knowledge of the placing of the gumbo fill dirt on the land until after March 1989, and the same is true of plaintiff's predecessor in title. In 1983, the only road adjacent to the land was Battlefield Road, which was then a two-lane blacktop road running along the southern boundary of the land.

For the reasons which follow, this court holds that plaintiff's cause of action for trespass was barred by § 516.120(3), the five-year statute of limitation pertaining to actions for trespass on real estate. It is unnecessary to consider whether plaintiff had standing to sue, because the action is barred even if plaintiff had such standing.

Plaintiff makes the following contentions: The limitation question is determined by the type of trespass which has been committed; the instant trespass is a continuing trespass, and plaintiff is entitled to recover for a period of time not to exceed the statutory period immediately preceding the institution of the action, that is, for the five years immediately preceding November 29, 1989; each day that the trespass continues starts a separate cause of action and the date of ascertainment of damages is irrelevant; even if the trespass is not a continuous trespass, the date that the damages were capable of ascertainment becomes critical; plaintiff was not aware it had sustained an injury until it had the fill dirt

---

**3.** The record on appeal includes a barely legible copy of the plat. The area of the fill deposit appears to exceed several acres.

tested by Fred Palmerton; neither plaintiff nor its predecessor in title had any knowledge of the suitability of the dirt for construction purposes until March 1989, when Palmerton performed his tests; the damages were not capable of ascertainment and did not manifest themselves until March 1989, when the tests were performed; the statute of limitation did not begin to run until March 1989, and the action was timely filed.

In *Davis v. Laclede Gas Co.*, 603 S.W.2d 554 (Mo. banc 1980), the court dealt with § 516.100, which reads:

Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; *provided, that for the purposes of sections 516.100 to 516.-370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment*, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained. (Emphasis added.)

In *Davis*, the petition alleged that on November 18, 1965, defendant gas company installed a vent pipe which ran from the gas meter inside plaintiff's cleaning and pressing plant to the exterior of the plant. The vent pipe interfered with the supply of gas and caused plaintiff's presses to be inoperable. Plaintiff had to take his pressing to be done elsewhere and lost profits from the time of the installation until July 13, 1970, when defendant moved the meter to the exterior of the plant. Plaintiff filed suit on January 17, 1973. The trial court held that the action was barred by § 516.120, the five-year statute of limitation, and dismissed the petition.

The supreme court held that plaintiff's claim was a continuing tort and that plaintiff was entitled to allege and prove a cause of action for the period from January 17, 1968 (the date five years prior to the date suit was filed), until July 13, 1970, when the wrongful conduct ceased.

In *Davis*, 603 S.W.2d at 556 the court said:

We have concluded that the following rule of law should be applied *in the peculiar and particular circumstances* of this case: if the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit. (Emphasis in original.)

The inquiry is: When was the damage resulting from defendant's trespass "sustained" and "capable of ascertainment" within the meaning of § 516.100? Plaintiff argues that the answer is March 1989, when Palmerton performed his tests. Defendant argues that the damages were sustained and were capable of ascertainment in September 1983, the last date when the gumbo fill dirt was deposited on plaintiff's land.

Within the meaning of § 516.100, damage is sustained and capable of ascertainment when it can be discovered or made known, even though the amount of damages is unascertained. *Lehnig v. Bornhop*, 859 S.W.2d 271, 273[6] (Mo.App.1993). A cause of action initially accrues, under § 516.100, when a party could first maintain the action successfully. *Hopmeier v. First American Title Ins. Co.*, 856 S.W.2d 387, 389[3] (Mo.App.1993). "It is important to note that the phrase 'capable of ascertainment' refers to the fact of damage, and does not mandate knowledge of the precise amount." *Id.* The test is to ascertain the time when plaintiff could have first maintained the action to a successful result. *Newton v. B.P.S. Guard Services, Inc.*, 833 S.W.2d 14, 16[2] (Mo.App. 1992). "Plaintiff's ignorance of his cause of action will not prevent the running of the statute." *Ahearn v. Lafayette Pharmacal, Inc.*, 729 S.W.2d 501, 503 (Mo.App.1987).

In *Jepson v. Stubbs*, 555 S.W.2d 307 (Mo. banc 1977), the court construed the "capable

of ascertainment" language of § 516.100 as it applied to § 516.120(4), which is applicable to malpractice actions against attorneys. At 312–313 the court said:

Section 516.100, which governs application of § 516.120(4) to this case, does not establish a rule of discovery for the purposes of determining when a cause of action accrues and the statute of limitations begins to run. Instead, it establishes the "capable of ascertainment" test. If the legislature had intended to prescribe a "discovery" test rather than the "capable of ascertainment" test, it would have expressly so provided. We so conclude because it did exactly that in § 516.120(5) where it established a discovery test in actions for relief based on fraud (subject to the proviso that it must be discovered within 10 years) and in § 516.105, Laws 1976, p. 767, S.B. No. 470, § 2, wherein it provided that in actions for medical malpractice involving acts whereby foreign objects are permitted to remain in the body, the action must be brought within 2 years from the date of discovery or the date on which the patient in the exercise of ordinary care should have discovered such negligence (subject to the proviso that no action could be commenced after 10 years from the date of the act of neglect complained of).

In his article[4] Professor Davis suggests that the phrase "capable of ascertainment" be construed to mean "capable of ascertainment in the normal course of events by this particular plaintiff in the exercise of reasonable diligence." Thus interpreted, he recognizes, the "capable of ascertainment" test would be almost equivalent to the "discovery" test. In so suggesting, Professor Davis seeks to arrive at what he deems to be a more just result. However, to so construe the language of the existing statute (§ 516.100) would be to rewrite the statute so as to establish a "discovery" rather than a "capable of ascertainment" test in all instances to which the statutes of limitation are applicable. This is not what the legislature did and it is not for us to rewrite the statute to so provide. If that

is to be done, it must be by legislative action. (Citing authorities.)

Defendant's conduct ended in September 1983. At that time it had caused all the harm of which plaintiff complains. The damage would not be increased by continuance or repetition of that conduct. Certainty of harm was sufficient to allow recovery for all the damage.

▪ In the language of *Davis*, the wrong was of such a character that all of the damages, past and future, were capable of ascertainment in a single action, if one had been instituted in 1983, and the entire damage accrued in the first instance. The statute of limitation began to run from that time. It cannot properly be said that the trespass created a fresh injury from day to day. See *Lato v. Concord Homes, Inc.*, 659 S.W.2d 593, 594–595 (Mo.App.1983).

It is true that Palmerton did not conduct his tests until 1989, but the petition did not allege and the affidavits did not state that such tests could not have been performed in 1983. It is not a question of whether the damages were "capable of ascertainment in the normal course of events by this particular plaintiff in the exercise of reasonable diligence." That construction of § 516.100 was rejected in *Jepson*. The damages were "capable of ascertainment" in 1983, as that phrase is construed in *Jepson*.

In *Arst v. Max Barken, Inc.*, 655 S.W.2d 845 (Mo.App.1983), an action for breach of warranties in the construction of a residence, the court held that the action was barred by § 516.120, the five-year statute of limitation. The action was filed in March 1981, and the trial court entered an order of dismissal. In affirming the trial court's ruling, the court of appeals said, at 848:

Appellants discovered cracks and shifting of their foundation in August of 1969 and they knew who caused such damage, yet they neglected to employ an expert to ascertain the nature of their damages until August of 1979. We find that appellants had notice of their cause of action against

---

4. The court was referring to "Tort Liability and the Statutes of Limitation," 33 Mo.L.Rev. 171 (1968), an article written by Prof. Frederick Davis.

respondent in August of 1969 and it is then that the statute of limitations began to run.

The presence of the fill dirt, whatever its composition, was evident in 1983. If plaintiff's contentions were upheld, it would mean that plaintiff could postpone the triggering of § 516.120(3) until a date when plaintiff chose to have soil tests conducted. This court holds that the cause of action sought to be asserted by plaintiff accrued in September 1983, and that this action, filed more than five years thereafter, was barred by § 516.-120(3).

The judgment is affirmed.

PREWITT and GARRISON, JJ., concur.