**POLYTECH, INC., Plaintiff–Appellant,**

**v.**

**SEDGWICK JAMES OF MISSOURI, INC., Defendant–Cross–Appellant.**

Nos. 70243, 70260.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 26, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 8, 1997.

Application to Transfer Denied
Feb. 25, 1997.

**310**

Louis J. Basso, Rabbitt, Pitzer & Snodgrass, P.C., St. Louis, for Appellant.

Thompson Coburn, Mary M. Bonacorsi, Jennifer J. Herner, St. Louis, for Defendant–Cross–Appellant.

HOFF, Judge.

Polytech, Inc. (Polytech) appeals the trial court's judgment on October 18, 1995 granting partial summary judgment in favor of Sedgwick James of Missouri, Inc. (Sedgwick) with respect to one of Polytech's claims. Sedgwick cross-appeals from the trial court's award of prejudgment interest pursuant to § 408.040.2 RSMo 1994 on a jury verdict with respect to the remainder of Polytech's claims. Sedgwick also cross-appeals from the trial court's decision to tax it with the costs of two depositions. We affirm.

Sedgwick is a licensed insurance broker. In 1987, it agreed to act as an insurance broker for Polytech. Sedgwick obtained insurance coverage for Polytech's plant, equipment, and business operations through Affiliated FM Insurance Company (Affiliated). Polytech's business interruption policy covered its estimated lost income and fixed expenses for a twelve-month period following the occurrence of any covered peril that prevented it from conducting business.

In June 1988, while renewing its business interruption coverage, Polytech prepared a business interruption worksheet setting forth its internal estimate of income and expenses for the next twelve months. The worksheet was prepared by Polytech using its own balance sheets and financial information. Polytech calculated that it required business interruption coverage in the amount of $633,600, an increase of approximately twenty-seven percent over the previous year's coverage of $501,630.

On July 21, 1988, Affiliated bound Polytech's business interruption coverage in the amount of $633,600, subject to the terms and conditions of its policy. Less than twenty-four hours later, a fire and explosion destroyed Polytech's manufacturing facilities and, as a result, Polytech could no longer continue its manufacturing operations. The fire and explosion triggered Polytech's rights to insurance under the terms of the policy.

After the fire, Polytech retained a public adjusting firm to prepare its claim for business interruption loss under the terms of the policy. New estimates of income and expense were prepared and were considerably higher than Polytech's estimates the previous month. Polytech never resumed operations and, consequently, no additional information about its financial operations became available following the fire.

On November 21, 1988, Polytech presented a proof. of loss on its business interruptions claim to Affiliated. In that proof of loss, Polytech claimed it had incurred business interruption losses in excess of the coverage it had bound the day before the fire.

Polytech filed three lawsuits following Affiliated's denial of its business interruption claim. On March 12, 1990, Polytech filed suit against Affiliated in the United States District Court for the Eastern District of Missouri seeking to recover its alleged business interruption loss under the terms of the policy (Polytech I). Sedgwick was never made a party in that case.

On April 12, 1993, Polytech filed a lawsuit against Sedgwick, alleging Sedgwick failed to obtain the proper type and amount of coverage for its real and personal property (Polytech II). Polytech did not raise a claim for its business interruption loss.

On October 26, 1994, the jury in Polytech I returned a verdict in favor of Polytech finding that it had sustained business interruption losses in the amount of $1,200,000. Prior to judgment being rendered, Polytech and Affiliated settled and Polytech I was dismissed.

Shortly after the October 26, 1994 verdict, Polytech filed an amended petition in Polytech II to add a claim against Sedgwick for its failure to obtain adequate business interruption coverage. The trial court denied Polytech's motion to amend the petition.

On December 16, 1994, while Polytech II was still pending, Polytech filed this lawsuit against Sedgwick (Polytech III). The original petition in this lawsuit asserted the claim for underinsured business interruption losses which Polytech had unsuccessfully attempted to add to Polytech II. Polytech then added its claim for underinsured property losses to Polytech III and, on April 11, 1995, dismissed Polytech II.

On October 18, 1995, the trial court granted Sedgwick's motion for summary judgment on Polytech's claim for underinsured business interruption losses on the grounds that it was barred by the five year statute of limitation. § 516.120(1) RSMo 1994. The remaining issues were tried before a jury during the week of December 11, 1995. The jury returned a verdict in favor of Polytech in the amount of $675,500 and, on January 4, 1996, the trial court entered judgment on this amount. It also awarded prejudgment interest in the amount of $146,241.12 with interest thereon as provided by § 408.040.2. This amount was amended to $136,247.52 on March 15, 1996. Sedgwick was taxed with the cost of the proceeding, including the costs of two depositions.

■ Polytech contends the trial court erred in sustaining Sedgwick's summary judgment motion to dismiss its claim for business interruption losses because the motion failed to establish Polytech's claim was, as a matter of law, time barred. Section 516.100 RSMo 1994 provides, in relevant part:

[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment.

The five-year statute of limitations, § 516.120(1), bars the instant action.

Polytech contends that its damages were not "capable of ascertainment" until October 24, 1994, when the jury returned the verdict in Polytech I finding that Polytech had sustained damages for business interruptions in the amount of $1,200,000, $566,400 more than its coverage through Affiliated provided. Before the jury returned the verdict, Polytech argues, it did not have a justiciable controversy against Sedgwick. We disagree and find that the critical date is December 13, 1988, when Affiliated denied Polytech's claim for any amount in excess of the amount of coverage provided by the policy.

■ Damages are "capable of ascertainment" within the meaning of § 516.100 when the aggrieved party first realizes that it will sustain damage. *M & D Enterprises, Inc. v. Wolff,* 923 S.W.2d 389, 394 (Mo.App.1996); *Nuspl v. Missouri Medical Insurance Co.,* 842 S.W.2d 920, 922 (Mo.App.1992). The term is held to refer to the fact of damage, not the precise amount. *Newton v. B.P.S. Guard Services, Inc.,* 833 S.W.2d 14, 16 (Mo.

App.1992). The statute of limitations is triggered where damage is capable of being ascertained, even when the full amount of the damage is not ascertainable. *Id.* The test is to "ascertain the time when plaintiff could have first maintained the action to a successful result." *Janssen v. Guaranty Land Title Co.,* 571 S.W.2d 702, 705 (Mo.App.1978).

Here, Polytech sustained its business interruption loss on July 22, 1988, when the fire and explosion terminated its manufacturing operations. Polytech knew the amount of its business interruption coverage on July 21, 1988, the day before the fire. On that day, Affiliated bound Polytech's business interruption coverage in the amount of $633,-600, subject to the terms and conditions of its policy. This amount was based upon the business interruption worksheet that Polytech prepared less than one month before the fire. Following the fire, Polytech retained a public adjusting firm to help prepare its claim for business interruption loss under the terms of the policy. Polytech subsequently submitted new documentation supporting a claim for business interruption losses in the amount of $1,727,417.

By November 21, 1988, Polytech knew that it was underinsured for its business interruption loss. The proof of loss filed on that date and signed under oath by Leon Dardick, Polytech's owner and chief executive officer, was for an amount "in excess of $633,600," the amount of coverage Polytech had for business interruption losses. Additionally, Mr. Dardick admitted under oath that he knew Polytech was underinsured on November 21, 1988. He also admitted that he knew then that Polytech had sustained damage measured by the difference between the amount of his business interruption loss and the amount provided for by the policy.

On December 13, 1988, Affiliated denied Polytech's claim for any amount in excess of the policy limits. It was at this point that the damage was ascertainable. Polytech's argument that it did not know the full extent of its damages does not excuse its failure to file suit within five years. It could have maintained a successful suit dating from December 13, 1988. When an injury is complete as a legal injury, the period of limitations commences at once. *Id.* at 705. Point denied.

■ We next turn to Sedgwick's allegations of error on cross-appeal. First, Sedgwick contends the trial court erred in awarding prejudgment interest pursuant to § 408.040.2 on the $675,500 jury verdict reached in this case, Polytech III. Section 408.040.2 provides, in part, as follows:

> In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at the rate specified in subsection 1 of this section, shall be calculated from a date sixty days after the demand or offer was made or from the date the demand or offer was rejected without counter offer, whichever is earlier.

On July 26, 1993, Polytech demanded payment of $675,000 to settle Polytech II. Sedgwick did not respond to Polytech's offer within sixty days and, consequently it was deemed rejected. Polytech dismissed Polytech II approximately two years later. On May 30, 1995, during Polytech III, Polytech made a second settlement demand. This demand was for $1,500,000. The jury subsequently returned a verdict for $675,500 and the trial court awarded Polytech prejudgment interest based on that verdict.

Sedgwick contends the trial court could not award prejudgment interest on the first settlement demand because the offer only applied to Polytech II, which was dismissed, and cannot be used in Polytech III, a subsequent action. Regarding the second settlement demand, Sedgwick asserts the trial court could not award prejudgment interest on that settlement demand because the amount of the settlement demand exceeded the amount of the jury verdict.

Section 408.040.2, by its plain language, requires only that a claimant make a demand for payment of a *claim* or an offer of settlement. *Lester v. Sayles,* 850 S.W.2d 858, 873 (Mo. banc 1993). There is nothing in the statute which requires that a claimant's set-

tlement demand refer to a "filed lawsuit" and not to an existing claim. The fact such a provision was not incorporated into the statute indicates the legislature did not intend such a result. *Baugus v. Director of Revenue*, 878 S.W.2d 39, 41 (Mo. banc 1994). The only claim made on July 26, 1993 when Polytech made its first settlement demand, was for Sedgwick's failure to properly insure Polytech's real and personal property. Polytech's claim for underinsured business interruption losses was not referred to as part of this demand. While Polytech II was still pending, Polytech filed Polytech III. Its claim in Polytech III was for Sedgwick's failure to obtain adequate business interruption coverage. Polytech then added to Polytech III its real and personal property claim from Polytech II. After adding its real and personal property claim to Polytech III, it dismissed Polytech II. The trial court, however, dismissed Polytech's claim for underinsured business interruption losses as barred by the statute of limitations. Consequently, when the jury returned a verdict in Polytech III, it was on the very claim Polytech offered to settle on July 26, 1993.

Sedgwick relies on *Patrick v. Alphin*, 825 S.W.2d 11, 14 (Mo.App.1992) to argue that a plaintiff may never "so apportion its claim and receive prejudgment interest by ignoring the amount of a complete offer and focusing instead on only a portion of the offer." In *Patrick*, two plaintiffs made a settlement demand on three separate claims, the amount of which exceeded the amount of the final judgment. One of the claims was not tried and, consequently, the settlement demand exceeded the claims which were presented to the jury. At no time were separate demands made on each claim. The case here is distinguishable from *Patrick*. Review of the record reveals Polytech's claim for underinsured property losses was a separate and distinct claim from its claim against Sedgwick for failure to obtain adequate business interruption coverage. The May 30, 1995 settlement demand letter reads as follows:

On July 26, 1993, Polytech made a demand (pursuant to Section 408.040.2) on Sedgwick James in the amount of $675,-000.00. Sedgwick James rejected this offer and pre-trial interest continues to run

on that amount, and will continue to run as to that amount up to the time of judgment. Another claim has been filed for business interruption, significantly increasing the liability and exposure of Sedgwick James.

Pursuant to Section 408.040.2, Polytech would make a demand of an additional $825,000.00 to settle the business interruption portion of its claim. Consequently, Polytech would be willing to settle all claims for payment of 1.5 million dollars, plus the pre-trial interest which has accrued to date on the $675,000.00.

If this is acceptable to Sedgwick James, please advise. This is a confirmation of the first demand of July 26, 1993 representing a portion of Polytech's claim at that time, and Polytech's additional demand of $825,000.00 for the new claim which has been added. The additional demand has been made in accordance with Section 408.040.2.

The letter clearly identifies and distinguishes Polytech's separate claims. It states Polytech would make "a demand of an *additional* $825,000.00 to settle the business interruption portion of its claim." The letter further confirms the first settlement demand on the underinsured real and personal property losses and advises that "the interest will continue to run ... up to the time of judgment" as a result of the first settlement demand. Point denied.

■ Sedgwick next contends the trial court erred in taxing it with the costs of two depositions even though both deponents testified at trial. Polytech defends these costs on the basis that the depositions were taken by Sedgwick at its request. Section 492.590 RSMo 1994 provides that when a party seeks the taxation of deposition costs, the costs are limited by the relevancy and probative value of the testimony offered by the deponent. Sedgwick argues that when a deposition is not used as evidence at trial because the deponent testifies in person, the deposition is not relevant or probative. Therefore, Sedgwick contends, it was not properly taxed with the costs of the depositions. Sedgwick, however, does not cite any authority for this proposition and we are unwilling to find that

the decision to not use a deposition at trial in lieu of live testimony renders the deposition irrelevant and nonprobative. The trial court's taxation of these depositions is affirmed.

Sedgwick's Motion to Strike Portions of Legal File is denied.

The judgment of the trial court is affirmed.

CRAHAN, P.J., and GRIMM, J., concur.