**Margaret LANE, Nina Smith, Dixie Lee Morgan and Virginia Nettles, Appellants,**

v.

**NON–TEACHER SCHOOL EMPLOYEE RETIREMENT SYSTEM OF MISSOURI and Potosi R–III School District, Respondents.**

**No. WD 64121.**

Missouri Court of Appeals, Western District.

Aug. 30, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 2005.

Application for Transfer Denied Nov. 22, 2005.

Ronald C. Gladney and James R. Kimmey, III, St. Louis, MO, for appellants.

Allen D. Allred, Jeffrey R. Fink and Kevin J. Rejent, St. Louis, MO, for Respondent NTRS.

Melanie G. Keeney and John M. Reynolds, St. Louis, MO, for Respondent Potosi R–III.

Before EDWIN H. SMITH, C.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Chief Judge.

Margaret Lane, Nina Smith, Dixie Lee Morgan and Virginia Nettles, retired bus drivers for the Potosi R–III School District (District), appeal the summary judgment of the Circuit Court of Cole County for the respondents, the District and the Non–Teacher School Employee Retirement System (NTRS), on the appellants' equitable suit for an accounting against the respondents, seeking an accounting for claimed creditable service toward the accrual of NTRS retirement benefits for service to the District prior to 1990 and a judgment for any balance found to be due in accordance with the accounting. The trial court granted the respondents' joint motion for summary judgment[1] on the basis that the appellants' suit for an accounting was barred by the five-year statute of limitations of § 516.120(2)[2] and/or laches.

The appellants raise two points on appeal. In Point I, they claim that the trial court erred in granting the respondents' motion for summary judgment, on the basis that the appellants' suit for an accounting was barred by the running of the

---

1. The School District filed its motion for summary judgment on December 17, 2003. The NTRS joined in the motion on February 11, 2004.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

applicable five-year statute of limitations of § 516.120(2) in 1995, which was prior to suit being brought, because, as a matter of law, the five-year period did not begin to run until the appellants retired and were denied retirement benefits for their pre-1990 service, either in 2000 or 2001, depending on the appellant. In Point II, they claim that the trial court erred in granting the respondents' joint motion for summary judgment, on the basis that the appellants' suit for an accounting was barred by laches, because, under the facts alleged in the motion, the doctrine of laches did not apply, as a matter of law, in that the applicable statute of limitations had not yet run.

We reverse and remand.

### Facts

The NTRS is a statutorily created retirement benefits system covering non-teacher employees who work at least twenty hours a week for Missouri school districts with a population of less than 300,000 and is established in §§ 169.600–169.715. Qualifying non-teacher employees become members of the NTRS by virtue of their employment with a qualifying district. § 169.650. A NTRS-qualifying school district is mandated, pursuant to § 169.620, to remit to the NTRS the contributions required to be withheld from a member's paychecks and the matching contributions required of the employer-district, both of which are based on a percentage of the member's earnings. Upon retirement, a member receives NTRS retirement benefits according to his years of creditable service and average salary. § 169.670.

Appellant Margaret Lane began working as a bus driver for the District in 1968 and remained employed in that capacity until the 1999–2000 school year. Appellant

Nina Smith began working as a bus driver for the District in 1966 and remained employed in that capacity until 2000. Appellant Virginia Nettles began working as a bus driver for the District in 1976 and still works for the District as a part-time bus driver, although she "retired," for the purposes of NTRS, in 2001.[3] Appellant Dixie Lee Morgan began working as a bus driver for the District in 1969, and, like Nettles, still works for the District as a part-time bus driver, although she "retired" for the purposes of NTRS.

In 1990, the appellants were informed by a NTRS representative that the District had not made the required contributions to the NTRS on their behalf for their pre–1990 employment with the District and that the NTRS had not given them creditable service for that employment. Having been so advised, the appellants completed the necessary NTRS enrollment forms, after which the District began remitting to the NTRS the contributions required by § 169.620. Approximately nine years later, on July 26, 1999, thirteen school bus drivers, including the four appellants, filed a petition against the respondents in the Circuit Court of Cole County, which is not included in the record on appeal, seeking a determination that they had accrued creditable service, for purposes of accruing NTRS retirement benefits, for pre–1990 service to the District and a judgment for payment of any benefits found due from such determination.

In November of 1999, the District filed a motion to dismiss based on the running of the applicable statute of limitations and laches. In December of 1999, the NTRS filed a motion, pursuant to Rule 55.27(b), for a judgment on the pleadings, alleging

---

3. Section 169.660.2 permits employees to retire and receive retirement benefits while

working part time without accruing further creditable service.

that the plaintiffs' claims were barred by the applicable statute of limitations, § 516.120. On May 9, 2000, the trial court granted both motions for "the reason that the statute of limitations had run." The plaintiffs appealed to this court in *Bettis v. Potosi R–III School District*, 51 S.W.3d 183, 186 (Mo.App.2001) (*Potosi I* ), claiming that the trial court erred because their cause of action against the respondents was not barred by the applicable five-year period of limitation of § 516.120(2)[4] since their cause of action did not "accrue," triggering the statute of limitations, until they had retired, such that their lawsuit was timely filed. In that regard, the respondents contended, in accordance with § 516.100, that the plaintiffs' cause of action accrued, triggering the statute of limitations, when their damages were sustained and were capable of ascertainment, which they alleged occurred in 1990, when the plaintiffs received paychecks that did not reflect any deductions for contributions to the NTRS. *Bettis,* 51 S.W.3d at 186. They argued that the plaintiffs were presumed to know the law such that they knew or should have known, from the lack of any deductions for NTRS contributions from their pre–1990 checks, that they had been damaged by the District and the NTRS. *Id.* at 188. This court expressly rejected that argument and adopted an accrual rule in pension cases that accrual occurs, for purposes of the statute of limitations, when there has been an application and a formal denial of benefits. *Id.* at 188–89.

On June 27, 2003, the trial court, on remand, granted the appellants leave to file a third amended petition, which is included in the record on appeal. The third amended petition, in which the appellants were the only named plaintiffs, alleged an equitable suit for an accounting, seeking an accounting for creditable service toward the accrual of NTRS retirement benefits for pre–1990 service to the District and a judgment for any balance found to be due them in accordance with the accounting. The petition alleged, *inter alia,* that Lane and Smith were retired from the District and were receiving benefits from the NTRS. As to Morgan and Nettles, the petition alleged that they had retired, in accordance with § 169.660.2, which permits employees to retire and receive retirement benefits while working part time, without accruing further creditable service. On August 1, 2003, the NTRS filed a cross-claim against the District. The cross-claim alleged that, to the extent that the NTRS was found liable to the appellants for additional NTRS retirement benefits for their pre–1990 service, the District was liable to the NTRS for failure to make the required NTRS contributions mandated by § 169.620.

On December 17, 2003, the District filed a motion for summary judgment on the appellants' third amended petition. The motion alleged that the District was entitled to judgment as a matter of law because the appellants' suit for an accounting was barred by the statute of limitations and the doctrine of laches. With respect to the running of the statute of limitations, as a basis for its motion, the District alleged, *inter alia:*

> During the 1990 NTRS Meeting, [the NTRS representative] allegedly told Plaintiffs that they were entitled to NTRS retirement benefits for their pre–1990 employment with the District, and that Plaintiffs should tell the District to begin making contributions to the NTRS on their behalf.

---

**4.** Section 516.120 provides that in the absence of a more narrowly tailored limitations period, any action pursuant to a Missouri statute must be commenced within five years.

Following the 1990 NTRS Meeting, Plaintiffs filled out enrollment forms with the NTRS to begin accumulating creditable service with the NTRS.

Perhaps as early as 1989, but certainly no later than the 1990 NTRS meeting, plaintiffs were aware, or became aware, that the District had not made contributions to the NTRS on behalf of Plaintiffs for Plaintiffs' pre–1990 employment.

Perhaps as early as 1989, but certainly no later than the 1990 NTRS meeting, Plaintiffs also were aware, or became aware, that the NTRS had not granted Plaintiffs creditable service for Plaintiffs' pre–1990 employment.

Despite being aware no later than 1990 that (1) the District had not made contributions to the NTRS for Plaintiffs' pre–1990 employment, and (2) that the NTRS was not granting Plaintiffs' creditable service for their pre–1990 employment, Plaintiffs waited until July 26, 1999 to bring this suit.

From these facts, the District argued in support of the motion that, in accordance with § 516.100, the appellants' cause of action against it accrued in 1990, triggering the statute of limitations, because, based on their being advised at the NTRS meeting that the District had not made contributions to the NTRS for the appellants' pre–1990 employment and that the NTRS had not credited the appellants for their pre–1990 employment, their damages were capable of ascertainment at that time.

With respect to laches, as a basis for summary judgment, the District's motion alleged facts, which it contended established prejudice sufficient to bar the appellants' suit for an accounting for the appellants' failure to file suit, initially, until 1999, some nine years after they had learned that the District had not made the requisite NTRS contributions. The facts alleged involved the loss or destruction of relevant documents, the unavailability of witnesses with knowledge of the appellants' work histories, and the appellants' own loss of memory.

The District's motion also sought summary judgment on the NTRS' cross-claim, on the ground that it was moot because the appellants' causes of action against the NTRS were barred by the doctrine of laches. On February 12, 2004, the NTRS joined the District's motion for summary judgment, except to the extent that it sought summary judgment on NTRS' cross-claim against it.

On March 15, 2004, the trial court granted the respondents' joint motion for summary judgment, on the basis that the appellants' suit for an accounting against the respondents was barred by the statute of limitations and laches.

This appeal followed.

### Standard of Review

In reviewing the grant of summary judgment:

> [o]ur review is essentially de novo. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (internal citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is

entitled to judgment as a matter of law. *Id.* at 380. When considering appeals from summary judgments, we will:

> review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (internal citations omitted).

## I.

In Point I, the appellants claim that the trial court erred in granting the respondents' motion for summary judgment, on the basis that the appellants' suit for an accounting was barred by the running of the applicable five-year statute of limitations of § 516.120(2) in 1995, which was prior to suit being brought, because, as a matter of law, the five-year period did not begin to run until the appellants retired and were denied retirement benefits for their pre–1990 service, either in 2000 or 2001, depending on the appellant. Specifically, they claim that the trial court misinterpreted and misapplied § 516.120(2) in determining when their suit for an accounting accrued, for purposes of triggering the five-year statute of limitations, such that the respondents' motion, even if all the facts alleged therein were taken as true, failed to allege a *prima facie* case for summary judgment on the basis that the appellants' suit for an accounting was, as a matter of law, barred by the running of the applicable statute of limitations.

To make a *prima facie* case for summary judgment, under Rule 74.04, the movant must allege facts, which are supported by specific references to the pleadings, discovery, exhibits or affidavits, dem-onstrating the lack of a genuine issue as to such facts and which establish a right to judgment as a matter of law. Rule 74.04(c); *Bost v. Clark*, 116 S.W.3d 667, 674 (Mo.App.2003). If the movant is a defending party, as is the case here, he can make a *prima facie* case for summary judgment by showing either: (1) facts that negate any one of the claimant's required proof elements; (2) that the non-movant, after an adequate period of discovery, has not been able to produce and will not be able to produce evidence sufficient to allow the trier-of-fact to find the existence of any one of the claimant's required proof elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defense. *Williams v. Mo. Highway & Transp. Comm'n*, 16 S.W.3d 605, 610 (Mo.App. 2000). Regardless of which of these three means is employed by the defending party, each establishes a right to judgment as a matter of law. *Id.* In this case, the respondents employed the third means, alleging facts in their motion, which they contend established the affirmative defenses of the running of the statute of limitations and laches. *See Yahne v. Pettis County Sheriff Dep't*, 73 S.W.3d 717, 719 (Mo.App.2002) (holding that the running of the statute of limitations is an affirmative defense); *Ewing v. Ewing*, 901 S.W.2d 330, 334 (Mo.App.1995) (holding that laches is an affirmative defense). This point deals with the running of the statute of limitations as a basis for granting the respondents' motion for summary judgment.

As to their statute-of-limitations defense, the respondents' joint motion for summary judgment alleged that § 516.120(2), which provides for a five-year limitation period for "[a]n action upon a liability created by a statute other than a penalty or forfeiture," applied. This court, in *Potosi I*, determined that § 516.120(2)

was the applicable statute of limitations. Thus, under the doctrine of the law of the case, this determination is not subject to re-examination in this appeal. *Vallejo–Davila v. Osco Drug, Inc.*, 895 S.W.2d 49, 53 (Mo.App.1995) (citation omitted). The question in this point is whether the statute of limitations of § 516.120(2) had expired so as to bar the appellants' cause of action against the respondents, as the trial court concluded had occurred as a basis for summary judgment for the respondents.

"The statute of limitations begins to run when plaintiff's right to sue arises." *Vandenheuvel v. Sowell*, 886 S.W.2d 100, 102 (Mo.App.1994). Stated another way, the statute of limitations begins to run when a party could first maintain his cause of action successfully. *Modern Tractor & Supply Co. v. Leo Journagan Constr. Co. Inc.*, 863 S.W.2d 949, 952 (Mo.App.1993). Section 516.100, which expressly applies to § 516.120, provides, in pertinent part, that a civil action, other than one for the recovery of real property, can only be commenced after the cause of action has "accrued." Thus, in accordance with § 516.100, the statute of limitations for the appellants' suit for an accounting against the District and the NTRS began to run when it "accrued." In that regard:

> [a] cause of action shall not be deemed to *accrue* when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

§ 516.100. (Emphasis added.) "This is an objective test to be decided as a matter of law by the trial court." *Harris v. Hollingsworth*, 150 S.W.3d 85, 88 (Mo.App.

2004). Under this test, a cause of action accrues when the damage can be discovered, not when it is actually discovered. *Id.* In other words, a "[p]laintiff's ignorance of his cause of action will not prevent the running of the statute." *Modern Tractor*, 863 S.W.2d at 952. The phrase "capable of ascertainment" in § 516.100 refers to the fact of damage and does not mandate knowledge of the precise amount. *Polytech, Inc. v. Sedgwick James of Mo., Inc.*, 937 S.W.2d 309, 311 (Mo.App.1996). "[T]he requirement that damages be sustained and capable of ascertainment does not change the tenet that when an injury is complete as a legal injury, the period of limitations commences at once." *Vandenheuvel*, 886 S.W.2d at 102–03.

In their third amended petition, the appellants alleged, as a basis for their suit for an accounting against the District, that it breached its duty to them, "under § 169.600 et seq. RSMo," by failing and/or refusing to report their creditable service from "1965 to at least 1990," and failing and/or refusing to make the required contributions to the NTRS for that service. As to their suit for an accounting against the NTRS, they alleged that it breached its duty to them, "under § 169.600 et seq. RSMo," by failing and/or refusing "to require the District to report creditable service and make contributions on [the appellants'] behalf" for service from "1965 to at least 1990." Hence, in deciding when the appellants' cause of action accrued, as to each defendant, so as to trigger the statute of limitations, the question is when were the damages resulting from these alleged breaches sustained and capable of ascertainment by the appellants.

In their joint motion for summary judgment, the respondents alleged, as to their statute-of-limitations defense, that the appellants' suit for an accounting accrued at

the very latest in the summer of 1990, triggering the statute of limitations, because during the summer of that year, they had actual knowledge that the "District had not made, and was not going to make, contributions to the NTRS on behalf of [the appellants] for pre–1990 employment." The appellants, however, contend that their cause of action did not accrue in 1990 because their damages were not sustained and capable of ascertainment until they actually retired and sought retirement benefits in 2000 or 2001, relying on the pension accrual rule this court adopted in *Potosi I*. The appellants argue that it was then and only then that they understood that the respondents were not going to honor the NTRS fiduciary duties owed them, which they alleged they breached in their suit for an accounting.

In *Potosi I*, this court recognized the general rule that the statute of limitations "does not begin to run [in an action to calculate pension benefits] until the claimant has retired or otherwise qualified, and has submitted a formal claim." 51 S.W.3d at 188 (*citing* 60A Am.Jur.2d *Pensions and Retirement Funds* § 1736 (1988)). Thus, in alleging in their joint motion for summary judgment that the statute of limitations, as to the appellants' suit for an accounting, began to run when the appellants had actual knowledge that the District had not made the required contributions to the NTRS for their service to the District prior to 1990 and the NTRS had not given them credit for such service, which was long before they filed for and were denied benefits for such service, the respondents were flying directly in the face of the pension accrual rule adopted by this court in *Potosi I*. Consequently, unless an exception to that rule applies, summary judgment for the respondents, on the basis of the running of the statute of limitations, would not lie in that the respondents concede that the appellants' cause of action

was not barred if the applicable time for the triggering of the statute of limitations was when the appellants actually retired and were denied NTRS benefits for their pre–1990 service.

In *Potosi I*, the trial court dismissed the appellants' suit against the respondents based on the running of the statute of limitations found in § 516.120(2). In that regard, the respondents contended that the statute was triggered when the appellants received their paychecks for service prior to 1990, which did not reflect any deductions for their contributions, which were required to be made by the District to the NTRS for creditable service. The respondents argued that the appellants were "presumed to know the law" concerning the required contributions to the NTRS for creditable service such that they should have known from the lack of deductions from their paychecks for that purpose that the District and the NTRS had breached their respective fiduciary duties to them, under § 169.600 *et seq.*, and that this presumed knowledge of their respective alleged breaches was sufficient to trigger the running of the statute of limitations. This court rejected that argument in *Potosi I*, reversing the trial court's order dismissing the suit and remanding the case to the circuit court. 51 S.W.3d at 189–90.

In the legal memorandum filed in support of the respondents' joint motion for summary judgment, they contended that this court, in reversing the trial court's order dismissing the appellants' suit in *Potosi I*, as being barred by the statute of limitations, did so solely on the basis that the appellants' alleged "presumed knowledge of the law" was not sufficient to trigger the running of the statute, but that "actual knowledge" was. Hence, they contended in the memorandum that because their motion alleged undisputed facts

showing actual knowledge by the appellants in 1990 of the District's failure to make contributions on their behalf to the NTRS, as required by law, and the NTRS' failure to credit them for services rendered to the District prior to 1990, the statute of limitations was triggered. In other words, the respondents were contending, in the memorandum in support of their motion, that although "presumed knowledge" by the appellants of the respondents' alleged breach of their respective duties to the appellants was not sufficient to trigger the statute of limitations, "actual knowledge" was. The respondents misread our holding in *Potosi I*.

As we state, *supra*, in *Potosi I*, this court did, in fact, reject the respondents' "presumed-to-know-the-law" contention that the statute of limitations began to run, barring the appellants' suit for an accounting against them, when the appellants received their paychecks from the District reflecting that no deductions had been made for the appellants' required matching pension contributions to the NTRS. However, in doing so, we did not hold that actual knowledge by the appellants of the alleged breaches of the respondents was sufficient to trigger the statute, as the respondents contend here. While the court in *Potosi I* observed that the NTRS "might wish to show that the members in question had notice of their duty, and that of the District, to participate in the funding of the system," this observation was expressly limited to the issue of laches. *Potosi I*, 51 S.W.3d at 189. The court never linked actual notice of the District's breach, in failing to withhold and contribute to the appellants' retirement system, to the running of the statute of limitations. Rather, the court's rejection of the respondents' "presumed-to-know-the-law" contention in *Potosi I* was based on the court's acceptance of the general pension accrual rule, that the "statute does not begin to run until the claimant has retired or otherwise qualified, and has submitted a formal claim." 51 S.W.3d at 188. There is nothing in *Potosi I* to fairly suggest that this court was recognizing an "actual-knowledge" exception to this general rule, as the respondents contend here, as a basis for when a cause of action, involving pension benefits, accrues to trigger the running of the statute of limitations. The only exception discussed in *Potosi I* was the court's discussion of the "repudiation exception" to the general rule of accrual adopted by the federal courts in Employee Retirement Income Security Act (ERISA) cases, which we discuss, *infra*.

In *Potosi I*, this court, apparently as further support for its enunciated general accrual rule in pension cases, discussed the general accrual rule in cases involving pension claims governed by ERISA. *Id.* As this court noted, the "usual rule in an ERISA action is that the cause of action accrue[s] after a claim for benefits has been made and been formally denied," *id.*, which is essentially the same rule we recognized in *Potosi I* as this state's general accrual rule for pension cases. In discussing the ERISA accrual rule, this court recognized the so-called "repudiation exception" to that rule. *Id.* at 189 (*citing Union Pacific R.R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998)). Under that exception, an employee's ERISA action accrues before a formal denial, and even before a claim for benefits is filed, when there has been a clear repudiation of benefits under the pension plan, which was made known to the employee. *Beckham*, 138 F.3d at 330. Thus, under the repudiation exception, an ERISA action, based on a breach of a fiduciary duty, as alleged here, would not accrue before a formal denial of the pension benefits claimed by the employee, unless he knew or should have known that the breach by

the fiduciary brought about a clear repudiation of those benefits. *Id.; Romero v. Allstate Corp.*, 404 F.3d 212, 223 (3rd Cir. 2005). This then appears to be the exception argued for by the respondents in their motion for summary judgment as to the running of the statute of limitations based on the actual knowledge of the appellants as to the respondents' alleged breaches of their fiduciary duties under § 169.600 *et seq.* However, in *Potosi I*, this court never adopted the repudiation exception as an exception to the general accrual rule it adopted for pension cases. Likewise, the respondents do not cite any cases that have adopted such an exception for pension cases in this state, and we cannot find any, such that if such an exception is to apply here, on which to base summary judgment for the respondents, it would have to be adopted by us in this case.

■■■■■ The ERISA accrual rule, that the cause of action accrues after a claim for benefits has been made and been formally denied, has been found to be consistent with the general accrual rule in non-ERISA federal cases, a.k.a. the "discovery rule." *Beckham*, 138 F.3d at 330; *Romero*, 404 F.3d at 223. In accordance with the federal "discovery rule," a plaintiff's cause of action in federal court, in the absence of a contrary directive from Congress, generally "accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Beckham*, 138 F.3d at 330. The ERISA accrual rule is consistent with the general accrual or discovery rule in that it provides that an ERISA action accrues when the employee learns or discovers that he is being denied rights or benefits under his pension plan. However, it is not identical to the discovery rule in that it does not provide for accrual prior to the employee's claiming or being denied benefits, even if he discovered or should

have discovered the future loss of benefits. This distinction "reflects a concern that it would be burdensome and unfair to require lay participants and beneficiaries to be constantly alert for possible errors or abuses that might give rise to a claim and start the statute of limitations running." *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1501 (9th Cir.1984). However, the "repudiation exception" to the ERISA accrual rule recognizes that, despite this concern, there are instances where it is made clear to the employee that his pension rights or benefits are being repudiated, that it is reasonable and in keeping with the guiding principles of the discovery rule to trigger the running of the statute of limitations, before a claim for benefits is actually filed or denied. In this fashion, the repudiation exception also works to avoid in ERISA cases "a myriad of ills that would accompany any rule that required the denial of a formal application for benefits before a claim accrues." *Romero*, 404 F.3d at 223. And, avoiding these "myriad of ills" would logically include fulfilling the important policies underlying statutes of limitations: "rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses." *See Beckham*, 138 F.3d at 330 (setting out underlying policies for statutes of limitations).

■■■■■ Although in *Potosi I* we did not expressly recognize the repudiation exception to the general accrual rule that we adopted for pension cases, it makes sense to do so. It makes sense in that the general accrual rule we adopted in *Potosi I* for pension cases is essentially identical to the ERISA general accrual rule, as we discuss, *supra*, and the federal "discovery rule," the federal general accrual rule, is similar to our general accrual rule, the

"capable-of-ascertainment rule," found in § 516.100, such that the obvious and logical reasons for adopting the ERISA general accrual rule and the repudiation exception, discussed, *supra*, would apply equally to why we should adopt both.[5]

■ Based on the foregoing analysis, we adopt, as an exception to the general rule of accrual in pension cases, which we adopted in *Potosi I*, the "repudiation exception," which has been adopted by the federal courts as an exception to the general ERISA accrual rule. Under this exception to the general rule of accrual in pension cases, the statute of limitations would begin to run in cases calculating benefits or determining rights under a pension plan when the claimant has retired or otherwise qualified, and has submitted a formal claim for benefits which has been denied, unless the claimant knew or should have known from an event or circumstance that a clear repudiation of those benefits or rights has occurred. *See Potosi I*, 51 S.W.3d at 188–89; *Beckham*, 138 F.3d at 330–31; *Romero*, 404 F.3d at 222–23. Even with the adoption of this exception, however, the respondents did not make a *prima facie* case for summary judgment based on the running of the five-year statute of limitations, as we explain, *infra*.

Under the repudiation exception, for the appellants' damages from the respondents' alleged breaches under § 169.600 *et seq.* to have been sustained and capable of ascertainment in the summer of 1990, as the respondents alleged in their joint motion for summary judgment, they had to have alleged undisputed facts establishing some event or circumstance that would have alerted the appellants, exercising due diligence, that their right to NTRS retirement benefits for their pre–1990 service to the District was being repudiated. In that regard, in their motion, the respondents alleged that no later than their 1990 meeting with the NTRS, the appellants were aware or became aware that the District had not made and would never make the required contributions to the NTRS on behalf of the appellants for their pre–1990 service to the District and that the NTRS had not granted and would never grant them creditable service for that service toward NTRS retirement benefits. While the facts alleged might demonstrate a breach of the respondents' duties under § 169.600 *et seq.*, they do not establish a clear repudiation of the appellants' right to benefits under the NTRS pension plan for pre–1990 service to the District such that the statute of limitations would have been triggered prior to their retirement and

---

**5.** In holding that there is logic in adopting in state pension cases the ERISA general rule of accrual and the repudiation exception, we realize that the "discovery rule," as a general rule of accrual, has been rejected in Missouri as being contrary to the "capable-of-ascertainment" rule adopted in § 516.100. *H.R.B. v. Rigali*, 18 S.W.3d 440, 443 (Mo.App.2000); *Harris–Laboy v. Blessing Hosp., Inc.*, 972 S.W.2d 522, 524 (Mo.App.1998) (*citing Jepson v. Stubbs*, 555 S.W.2d 307, 312–13 (Mo. banc 1977)). However, the discovery rule rejected by our state courts is not the same as the federal "discovery rule." As discussed, *supra*, the federal discovery rule for accrual encompasses not only the actual discovery of the injury that is the basis of the litigation, which

is what has been rejected by our state courts, but also constructive discovery of the injury—the injury should have been discovered with due diligence. As we discussed, *supra*, under the "capable-of-ascertainment" rule of § 516.100, which is an objective test, the "right to sue arises when the fact of damage is 'capable of ascertainment,' even though not actually *discovered* or ascertained." *Harris v. Hollingsworth*, 150 S.W.3d 85, 88 (Mo.App. 2004) (emphasis added). Thus, in practical effect, the constructive prong of the federal discovery rule is essentially the equivalent of the "capable-of-ascertainment" rule found in § 516.100—that the resulting damage or injury should have been discovered or ascertained using due diligence.

filing for benefits for pre–1990 service to the District and being denied the same. While the District's failure to make the contributions required for the appellants' pre–1990 work for the District and the NTRS' refusal to give credit for the same might be evidence of their repudiation of the appellants' rights under the NTRS pension plan, it is not conclusive as a matter of law—the standard for summary judgment. It is arguable that it was reasonable for the appellants to believe, even after having been made aware of the respondents' failure to comply with the requirements of § 169.600 *et seq.*, that once they filled out enrollment forms with the NTRS, following the 1990 NTRS meeting, a fact alleged in the respondents' motion, after having been "allegedly told" by a NTRS representative, Robert Rust, during the meeting that "they were entitled to NTRS retirement benefits for their pre–1990 employment with the District," also alleged as a fact in the respondents' motion, that the necessary contributions to the NTRS for creditable service for pre–1990 service would be made retroactively to make them eligible for NTRS retirement benefits for such service such that a genuine issue of material fact existed as to whether there was a clear repudiation of the appellants' right to NTRS benefits as a result of the events surrounding the 1990 NTRS meeting. A genuine issue of material fact exists, so as to defeat a motion for summary judgment, "where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist." *Phillips v. CNS Corp.*, 135 S.W.3d 435, 440 (Mo.App.2004). As such, the respondents' motion failed to allege undisputed facts triggering the repudiation exception to the general accrual rule for pension cases, as adopted in *Potosi I*, such that the general rule would apply, meaning that the appellants' suit for an accounting as to creditable NTRS re-

tirement service for pre–1990 work for the District did not accrue until 2000 or 2001, when the various appellants filed for benefits, including benefits for that period of time, which were denied. Hence, under the facts alleged in the respondents' joint motion, the five-year statute of limitations of § 516.120(2) had not run at the time of the appellants' initial filing of their lawsuit such that summary judgment for the respondents on that basis was error. Thus, if we are to affirm the trial court's summary judgment for the respondents, it must be on the alternative basis of laches, which we discuss in Point II, *infra.*

## II.

■ In Point II, the appellants claim that the trial court erred in granting the respondents' joint motion for summary judgment, on the basis that the appellants' suit for an accounting was barred by laches, because, under the facts alleged in the motion, the doctrine of laches did not apply, as a matter of law, in that the statute of limitations had not run. We agree.

■ The invocation of the equitable doctrine of laches requires that a party with knowledge of facts that give rise to his or her rights unreasonably delays asserting those rights for an excessive period of time and the other party suffers legal detriment due to the delay. *Hart v. Kupper Parker Communications, Inc.*, 114 S.W.3d 342, 350 (Mo.App.2003). Whether the doctrine of laches applies in a particular case depends on the length of delay, the reasons for the delay, how the delay affected the other party, and the overall fairness in permitting the assertion of the claim. *Id.* The doctrine is not favored and is used primarily to prevent injustice. *Moore v. Weeks,* 85 S.W.3d 709, 721 (Mo. App.2002).

The Missouri Supreme Court has held that "the doctrine of laches will not bar a suit before expiration of the period set forth in the applicable statute of limitations in the absence of special facts demanding extraordinary relief." *State ex rel. Gen. Elec. Co. v. Gaertner*, 666 S.W.2d 764, 767 (Mo. *banc* 1984). This follows from the basic principle that equity follows the law, *Hughes v. Neely*, 332 S.W.2d 1, 6 (Mo.1960), and where the rights of a party are clearly defined by statute, legal principles, and precedents, those determinations may not be unsettled or ignored in equity. *Place v. P.M. Place Stores Co.*, 950 S.W.2d 862, 866 (Mo.App.1996). Thus, equity may not disregard a statutory provision, for where the legislature has enacted a statute that governs and determines rights of the parties under certain circumstances, equity, as much as the law, is bound thereby. *Kuenzle v. Mo. State Highway Patrol*, 865 S.W.2d 667, 669 (Mo. *banc* 1993).

In their motion, the respondents alleged, as to why laches applied to bar the appellants' suit, facts concerning the loss or destruction of relevant documents, the unavailability of witnesses with knowledge of the appellants' work histories, and the appellants' own loss of memory. In *Gaertner*, the Missouri Supreme Court offered no guidance as to what kind of "special facts" would warrant barring an action for laches before the relevant statute of limitations has run. However, to accept the facts alleged by the respondents in their motion as constituting sufficient special facts to invoke the doctrine of laches would mean that under the circumstances of this case, we would be totally ignoring the sound logic behind the general rule of accrual in pension cases adopted in *Potosi I* and the repudiation exception adopted, *supra*. We reject that notion. Hence, we find no special facts alleged in the respondents' motion to make a *prima facie* case for summary judgment on the basis of laches such that the trial court erred in granting summary judgment on that ground.

## Conclusion

The circuit court's summary judgment for the respondents, on the appellants' suit for an accounting, is reversed, and the case is remanded for further proceedings consistent with this opinion.

HOWARD and HOLLIGER, JJ., concur.